Fredrick and Sharlene WILLIAMS, husband and wife,
Plaintiffs-Appellants,

v.

KAEREK BUILDERS, INC., Defendant-Respondent.

Court of Appeals

*No. 96–2396. Submitted on briefs May 9, 1997.—Decided June
18, 1997.*

(Also reported in 568 N.W.2d 313.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Douglas W. Rose* and *Jennifer M. Duffy* of *Blumenfeld, Rose & deJong, S.C.* of Brookfield.

On behalf of the defendant-respondent, the cause was submitted on the brief of *William R. Binetti* of Racine.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J. This case primarily concerns the application of the *Hansen/Borello*[1] discovery rule to a negligence suit brought against a home builder due to a leaky basement. The builder made several representations to the homeowners which allegedly induced them to delay discovering the cause of their wet basement and initiating this lawsuit. The circuit court nonetheless determined that the representations should not have delayed the homeowners and awarded summary judgment to the builder because the statute of limitations had expired. We hold, however, that the question of whether the homeowners reasonably relied on the representations is a question of fact and remand for a trial.

FACTS

The record contains the following undisputed facts. In October 1987, Fredrick and Sharlene Williams purchased a house from Kaerek Builders, Inc. (the

---

[1] *See generally Hansen v. A.H. Robins Co., Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1983), and *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 388 N.W.2d 140 (1986).

Builder). At that time, the house was still in the final stages of construction, but the Williamses were able to move in by that December. The purchase agreement included a warranty furnished by the Builder.

In addition to these undisputed facts, the Williamses' complaint and affidavits filed in opposition to summary judgment raise the following allegations. For the purposes of our analysis—reviewing a summary judgment award in favor of the Builder—we accept these allegations in a light most favorable to the Williamses. *See Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473, 477 (1980).

Within a few months after the Williamses moved in, they noticed "dampness, leakage and seepage" in the basement. They reported this problem to the Builder, who told them that the problems resulted from "condensation" and that all new homes have such problems. The Builder furnished them with some waterproofing paint which was applied in the spring of 1988. During the summer of 1988, the house nonetheless remained damp.

As this water problem continued, the Williamses again consulted the Builder in the fall of 1988. This time the Builder installed a second sump pump in the basement. The Builder assured the Williamses that this water problem was not unusual and it would resolve itself.

Although the Williamses' basement remained dry that winter, in the summer of 1989 the water problems returned. Then in the fall of 1989, the basement dried out. But again, during the summer of 1990, the water problems returned. The basement was dry during the winter of 1990.

When the water problem reoccurred in the spring of 1991, the Williamses returned to the Builder who

now told them that the water problem was related to a temporary sediment pond located on the building site next door. The Builder assured the Williamses that when the construction on that site was completed, and the pond removed, then their water problem would cease.

But while the house next door was finished by the fall of 1991, the Williamses' water problems continued. When the Williamses looked to the Builder for an answer, the Builder again said that over time their leaky basement problem would resolve itself.

The Williamses waited until the summer of 1994 when their basement worsened. The Williamses now had "cracks in the floor of the basement, running water, fungus on the drywall, and water lines on the cement blocks." In July 1994, they retained a water-proofing company to inspect their basement.

The company could not determine the cause of the leaking from a visual inspection and had to excavate outside the basement wall and dig up the concrete floor. The company was then able to determine that the drain tiles were not properly installed. The company performed the necessary repairs at a total cost of $8926; and the problem was solved.

In June 1996, the Williamses retained an engineer to further explore the cause of their water problem. The expert opined that there were two main causes for the water problem. One, the house was built at too low of an elevation. The drain system was thus below the water table, causing surface runoff to run toward the house, not away from the house. Two, the Builder wrongfully backfilled the foundation with clay, instead of with a porous material such as small stones. Over time, as the clay retained water, consolidated and set-tled, it began to exert pressure on the basement walls.

The expert provided this summary to the Williamses: "[the Builder] could have given you a dry basement if [it] had set the first floor grade elevation properly and if [it] had backfilled with stone."

## PROCEDURAL BACKGROUND

The Williamses filed suit against the Builder in July 1995 asserting two causes of action. First, they claimed that the Builder negligently constructed the house. Second, they claimed that the Builder breached the 1987 purchase contract and warranty by failing to construct the home in a "workmanlike manner" and to "cure defects in the construction."

After filing a timely answer, the Builder moved for summary judgment in June 1996 on grounds that the six-year statute of limitations on the two claims had expired.[2] *See* §§ 893.43 and 893.52, STATS. The Builder furnished an affidavit which confirmed that it built the house and performed some "additional repairs in 1988," but which otherwise alleged that it had no "further contact" with the property after that time. The Builder argued that the Williamses discovered their injury as soon as they moved in and that there was no reasonable explanation for why they waited until 1994 to hire the waterproofing company to uncover the cause of their injury. The Builder made a similar argument against permitting the breach of contract action to move forward.

The circuit court agreed. With regard to the negligence claim, it found that the Williamses had known

---

[2] The Builder labeled this motion as a "motion for dismissal." However, it submitted affidavits in support of this motion; thus, it was really seeking summary judgment and we will treat the motion as such. *See Radlein v. Industrial Fire & Cas. Ins. Co.*, 117 Wis. 2d 605, 609, 345 N.W.2d 874, 877 (1984).

about this injury—the wet basement—soon after they moved in. The circuit court further found that the Williamses should have realized sooner that the Builder "was simply giving them the runaround." The circuit court thus reasoned that the Williamses should have contacted the waterproofing company earlier (not waited until 1994) to substantiate their suspicion that the Builder had done something to cause their water problem. The circuit court concluded that because the Williamses did not file their claim until July 1995, eight and one-half years after they moved in, their claim was barred under the six-year statute of limitations.

In addition, the circuit court awarded judgment to the Builder on the breach of contract claim. Here, the Williamses sought to invoke the doctrine of equitable estoppel and bar the Builder from asserting the statute of limitations because the Builder had made continuing representations that it was going to remedy the problem. *See generally Hester v. Williams*, 117 Wis. 2d 634, 644–46, 345 N.W.2d 426, 431–32 (1984). The circuit court rejected the invitation, reasoning that the Williamses, who were getting the "runaround" from the Builder, could not have reasonably relied on the Builder's statements.[3] The Williamses appealed both rulings.

DISCUSSION

*1. The Negligence Claim*

■
The issue of whether the Williamses' negligence action is barred under the statute of limitations

---

[3] The Williamses later filed a motion for reconsideration. The circuit court affirmed its previous ruling.

requires application of the discovery rule. Under this rule, their claim did not accrue, and the statute of limitations did not begin to run, until they "discovered" (or should have "discovered") the nature of their injury and the probable cause of that injury. *See Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 406–07, 411, 388 N.W.2d 140, 144, 146 (1986).

■■

In this case, we see no dispute about when the Williamses discovered their injury. Indeed, the Williamses allege that soon after they moved into the house, they noticed that the basement had water problems.[4] We therefore join the circuit court's determination that the Williamses discovered their injury in early 1988. The only dispute is when the Williamses knew (or should have taken the affirmative steps to learn) what caused this injury.

The Williamses argue that they could not have reached an objective conclusion about the cause of their wet basement until the fall of 1994 when the waterproofing company excavated the basement and learned that the foundation was not properly constructed. The Williamses conclude that because they filed their claim within six years of the fall of 1994, their action was timely.[5]

---

[4] The Williamses explain in their brief that they "clearly knew that they had some dampness in their basement as early as 1988. However, that subjective knowledge alone is not even close to what is required for complete accrual of a cause of action." We gather from this statement that the Williamses concede that they discovered their injury in 1988, but that they challenge the determination that they also knew the cause of the injury at that time.

[5] The Williamses also argue that the Builder was engaged in "continuing negligence" because it was unable to remedy the

In response, the Builder urges that we uphold the circuit court's reasoning. As the Williamses knew the "general nature of the problem" soon after they moved in, the Builder contends that if they had acted with "due diligence," they could have discovered the cause of their injury in early 1988.

We begin by observing that the circuit court properly framed the issue to involve the question of when the Williamses "should have discovered" the cause of their wet basement. Thus, we initially reject the Williamses' assertion that the statute did not begin to run until the fall of 1994 when they actually retained the waterproofing contractor. *See Borello*, 130 Wis. 2d at 411, 388 N.W.2d at 145–46. Under the discovery rule, the Williamses had a duty to exercise " 'reasonable diligence' " and not " '*close their eyes to means of information reasonably accessible to them*' . . . ." *See Stroh Die Casting Co. v. Monsanto Co.*, 177 Wis. 2d 91, 103, 502 N.W.2d 132, 136 (Ct. App. 1993) (quoted source omitted) (emphasis in original). Although the Williamses now believe that the Builder misinformed them about the cause of their wet basement, to determine when this claim accrued, we must measure when the Williamses should have realized that the Builder

problem after repeated efforts to do so. *See Kolpin v. Pioneer Power & Light Co.*, 162 Wis. 2d 1, 24, 469 N.W.2d 595, 604 (1991) (holding that a negligence claim accrues when the "last act" in "a continuum of separate negligent acts" occurs). We reject this argument because it does not coincide with their theory of the case. They allege that the Builder negligently constructed the foundation. Thus, the act of negligence occurred during the construction of the house, not after they moved in. Their allegations concerning the Builder's post-sale conduct are more related to their breach of contract claim which we discuss in a latter part of the opinion.

was giving them false information (giving them the "runaround" as the circuit court termed it) and thus sought a second opinion.

This question of when the Williamses should have taken action is a matter of *fact for the jury. See id.* at 104, 502 N.W.2d at 137. While we recognize that in some cases this type of "fact" could be appropriately resolved on summary judgment, *see id.*, we disagree with the Builder that the circuit court correctly made such a ruling in this case. We hold that the circuit court erred when it awarded summary judgment to the Builder.

Although the circuit court held as a matter of law that the Williamses should have sought out a second opinion much earlier, it never concretely determined an exact date when the Williamses should have done so. Indeed, the ambiguity in the circuit court's analysis stems from the fact that the record does not conclusively reveal when that date passed. The circuit court noted that the Williamses made "an effort to work the matter out with the building contractor and that was fine." But because the Williamses waited over six years, from the spring of 1988 to July of 1994, before contacting the waterproofing company, the court determined that the Williamses waited too long.

However, the circuit court never pointed to a specific time during these six years when the Williamses should have come to the realization that they needed a second opinion. This is the fact that must be resolved *before* a determination can be made that the statute of limitations possibly had expired by the time the Williamses filed suit. The Williamses allege that they only waited because they believed the Builder when it repeatedly said that it would fix the problem. As the

circuit court recognized, it was "fine" for the Williamses to wait for such a resolution.

■

We conclude that, in analyzing discovery questions involving faulty workmanship, a builder's representations *can* result in a justifiable delay of discovering the cause. The ultimate decision of whether this course of conduct is reasonable must be made by a trier of fact. Accordingly, we remand this case for trial.

## 2. The Breach of Contract Claim

Unlike the Williamses' negligence claim, their breach of contract claim is not subject to the discovery rule. Rather, the Williamses were required to bring their breach of contract action within six years of the breach, regardless of whether they had knowledge of the breach or could have diligently discovered the breach. *See CLL Assocs. Ltd. Partnership v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 617, 497 N.W.2d 115, 120 (1993).

The breach in this case is the Builder's failure to properly construct the home.[6] Thus, under the rule set out in *CLL Associates*, since the breach occurred in 1987 and their claim was filed in 1995, the statute of limitations applies.

However, the Williamses argued to the circuit court that the Builder should be equitably estopped

---

[6] The Williamses' brief identifies the time of the breach as the time that "construction was complete," that being December of 1987. Although the Williamses alleged in their complaint that the Builder also breached the warranty included in the purchase agreement by failing to cure the defects, which would have occurred after construction was completed, they do not argue to this court that their breach of contract action accrued any later than December of 1987.

from asserting this defense because the Builder induced them not to take action. The Williamses alleged that the Builder engaged in "unfair and misleading" conduct when it suggested that it would be able to correct the problem.

We recognize that a circuit court may use its equitable powers to set aside a statute of limitations defense in certain circumstances. *See Hester*, 117 Wis. 2d at 644, 345 N.W.2d at 431. To aid courts in deciding whether to exercise this authority, the *Hester* court set out six guideposts:

(1)     Is the defendant guilty of fraudulent or inequitable conduct?

(2)     Did plaintiff fail to timely commence the action because he or she relied on the defendant's conduct?

(3)     Did the defendant's questionable conduct occur before the statute of limitations expired?

(4)     Did the plaintiff diligently pursue the suit after the defendant's questionable conduct ceased?

(5)     Did the plaintiff rely on the defendant's conduct to his or her disadvantage? and

(6)     The defendant need not have engaged in actual fraud.

*See id.* at 644–45, 345 N.W.2d at 431. Here, the Williamses basically argue that the "conduct of [the Builder] meets the requirements of the six rules, and [the Builder] therefore should be estopped from asserting the statute of limitations." It asks that we reverse the circuit court's decision not to provide this equitable remedy.

We first turn to the applicable standard of review. The Williamses contend that this issue involves a pure legal question, involving the interpretation of the statute of limitations and the application of this standard to the facts. This is incorrect.

■

The decision to provide an equitable remedy rests within the circuit court's discretion. *See Mulder v. Mittelstadt*, 120 Wis. 2d 103, 115, 352 N.W.2d 223, 228 (Ct. App. 1984). We will not reverse a court's discretionary choice provided that it applies the correct legal standards to the facts of the case and reaches a reasonable conclusion. *See generally Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981). Therefore, the decision of whether to apply this equitable remedy was primarily *a matter for the circuit court.*

We now turn to the circuit court's ruling. Its analysis emphasized the fifth *Hester* guidepost. The circuit court determined that whatever the Builder might have told the Williamses, its actions clearly demonstrated that it was not going to remedy the problem. Similar to its analysis of the negligence claim, the circuit court found that the Williamses were getting the "runaround." The circuit court reasoned that the Williamses could not have reasonably relied on the Builder's representations that it was going to fix this problem, and therefore the Williamses had no legitimate reason for waiting to bring this claim.

■

The circuit court's analysis reveals that it applied the correct legal standard. And after considering this standard against the Williamses' factual allegations, we conclude that the circuit court reached a reasonable conclusion when it found that the Builder's post-sale conduct could not have induced "reasonable reliance

thereon" by the Williamses. During the six years following the time when the Williamses moved in, the Builder had told them that all new houses have condensation and it gave them some waterproofing paint to solve the problem. The Builder also installed an additional sump pump to try to solve the problem. The Builder also told them that their water problem stemmed from the construction site next door. But the Builder was never right. The circuit court had reason to conclude that the Williamses should not have given the Builder so many chances and should have started this action much sooner.

We of course recognize that, at first blush, our decision to uphold the circuit court on this equitable matter seems to contradict our decision to reverse the circuit court on the negligence issue. But although the facts of the two claims are closely related, the Williamses have sought different remedies—one equitable and one legal. Thus, the circuit court appropriately applied a different analysis to each claim. And moreover, our *review* of its analysis of each claim is different. This difference explains why we reach two seemingly contrary results.

CONCLUSION

We reverse the circuit court's decision to award summary judgment to the Builder on the negligence claim. We remand to have a trier of fact resolve the question of when the Williamses should have discovered the cause of their water problem. With regard to their breach of contract claim, we affirm the circuit court's decision not to apply its equitable powers. We affirm the awarding of summary judgment to the Builder on this claim.

163

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.