¶ 1 M+S Brugg AG ("Brugg") appeals orders following a products liability trial. Among other things, Brugg argues the claims against it should have been dismissed for failure to comply with the statute of limitations. Kimberly Schwark cross-appeals, arguing numerous trial court errors. We agree the statute of limitations precluded claims against Brugg and therefore reverse. We need not reach the remaining issues.
 Background ¶ 2 Schwark suffered injuries on August 25, 1997, while operating a cross-feed splicer system at Birchwood Manufacturing Company. The system spliced and glued veneers and then cut them into various lengths. Birchwood purchased the machine in 1987 through a distributor, W.T. Bramlett, Inc. Sometime after installation, Birchwood modified the machine by, among other things, removing an automatic stacker utilized in the system as a guard to prevent an operator from reaching in where a knife cuts the veneer.
 ¶ 3 During the course of a worker's compensation claim, Schwark obtained from Birchwood documents supplied with the machine by Bramlett. Three days prior to the expiration of the statute of limitations for the third-party claim, Schwark filed suit against Bramlett as the distributor, and against George Fischer, Ltd. ("Fischer"), [1] as the purported manufacturer of the splicer.
 ¶ 4 Fischer subsequently moved for dismissal. In support of its motion, Fischer proffered the affidavit of its general counsel, Richard Furrer. The Furrer affidavit stated that Fischer was a Swiss holding company that lacked sufficient contacts with Wisconsin. The affidavit also stated that Fischer did not manufacture, design, sell or distribute the splicer. Appended as part of Exhibit A to Fischer's motion to dismiss was a memorandum dated October 6, 2000, from insurance broker Florian Adler to an individual named Caroline memorializing a brief discussion the preceding day with Furrer ("the Adler memo"). The Adler memo stated that Furrer was investigating whether Brugg (formerly known as George Fischer Ltd. Brugg) may have been the manufacturer of the splicer. The Adler memo stated that Fischer was merely a shareholder of Brugg and had no active part in the manufacture or design of any of Brugg's products. The memo further states that in 1988, Fisher's shares in Brugg were sold to another investor.
 ¶ 5 On July 20, 2001, nearly four years after the injury, Schwark filed a motion to amend the complaint to include Brugg as an additional defendant, together with Fisher+Ruckle Ltd., Fisher+Rickle AG, and Fisher+Ruckle Service, Inc. (referred to collectively as "FRSI").[2]
Schwark was granted leave to amend on July 23, 2001. On November 5, 2001, Schwark filed the amended complaint, adding only Brugg as a defendant, and opting not to add FRSI as a fourth defendant. The amended complaint contained the same allegations as the initial complaint.[3]
 ¶ 6 Brugg answered and sought to dismiss the claims against it based on the statute of limitations. The court ordered an evidentiary hearing and at the same time granted Fischer's motion to dismiss, without prejudice. The evidentiary hearing was conducted on November 14, 2002. Schwark argued the claims against Brugg should relate back to the date of the initial complaint. Schwark alternatively argued the discovery rule applied because it was impossible to discover the identity of Brugg prior to the receipt of the Furrer affidavit and the Adler memo.
 ¶ 7 The circuit court denied Brugg's motion to dismiss. Shortly before trial, Schwark settled with Bramlett, the distributor. On the Saturday before trial, Brugg's attorneys came across 1993 drawings of the machine that had not yet been produced. Schwark requested Brugg's pleadings be stricken. The circuit court granted the motion and struck Brugg's pleadings with respect to liability. On Brugg's motion for reconsideration, counsel described the drawing and noted the last change was five years after the splicer was sold to Birchwood. Brugg's counsel argued the drawing showed nothing that had not been depicted in other brochures previously produced. The court denied the motion for reconsideration, characterizing the schematic as "crucial," despite stating that "As I sit here today, I cannot make an assessment as to how important or unimportant these schematics might be to the plaintiff's cause of action."
 Discussion ¶ 8 After three days of trial, the jury apportioned Birchwood's responsibility at 55%, Brugg's at 35%, and Schwark's at 10%. Neither Bramlett nor FRSI were on the verdict. Both Schwark and Brugg filed motions after verdict. The court reduced the award for past medical expenses to $0 because of a lack of proof of reasonableness and necessity. The court also changed the award of lost future earning capacity to $0 because there was no expert testimony as to Schwark's earning capacity. The court denied the remainder of the motions. This appeal and cross-appeal followed.
 ¶ 9 We turn first to the issue whether the statute of limitations precluded the claims against Brugg, filed more than one year after the statute of limitations expired. Brugg argues Schwark did not satisfy the relation-back conditions of WIS. STAT. § 802.09(3).[4] We agree.
 ¶ 10 WISCONSIN STAT. § 802.09(3) spells out four conditions that must be met for an amended pleading to relate back to the date of the filing of the original pleading. First, the new pleading must arise out of the conduct set forth in the original pleading. Second, the party to be added must have received notice so it will not be prejudiced in maintaining its defense. Third, the party to be added must know or should have known that, but for a mistake concerning identity, the action would have been brought against it. Finally, conditions two and three must be fulfilled within the prescribed limitations period.Dakin v. Marciniak, 2005 WI App 67, ¶ 6, 280 Wis. 2d 491,695 N.W.2d 867.
 ¶ 11 There is no dispute the first condition was met, as the amended complaint contained the same allegations as the initial complaint. Schwark argues condition two was met because the Adler memo and the Furrer affidavit provided Brugg notice of the lawsuit within the limitations period. See Grothe v. Valley Coatings, Inc.,2000 WI App 240, ¶ 11, 239 Wis. 2d 406, 620 N.W.2d 463.[5]
 ¶ 12 The record is devoid of any indication that Brugg was the recipient of either the Adler memo or the Furrer affidavit prior to the expiration of the limitations period.[6] There is also no evidence supporting the circuit court's finding that the Adler memo was an "internal memo" as regards Brugg.[7] Nevertheless, the court concluded the Adler memo "clearly reflects the defendants were aware of the claim." The court found "the businesses are related either by share agreements, licensing agreements, or merely as different names for the same company."
 ¶ 13 The findings cannot be sustained that Fischer and Brugg were related by share agreements or were merely different names for the same company. The record demonstrates Brugg was a separate subsidiary of Fischer in 1987, the year Birchwood ordered the splicer, and in the next year Fischer sold all its stock in Brugg. In Wisconsin, such corporate subsidiary status is not lightly disregarded. See Consumer's Co-op v.Olsen, 142 Wis. 2d 465, 474, 419 N.W.2d 211 (1988). Here, the court's finding that Fischer and Brugg were the same company for purposes of notice overlooked the traditional legal presumption of separateness between a corporation and its subsidiaries. See id.
 ¶ 14 Schwark cites several inapposite cases from other jurisdictions to insist that a plaintiff can substitute a subsidiary for its parent corporation after missing a limitations deadline. The record in the present case contains no evidence that Fischer and Brugg shared officers, directors, a principal place of business, or any other factor which would allow a court to conclude that in October 2000, the companies were so closely related that a presumption of notice should apply between them.
 ¶ 15 The circuit court also erred by finding that a licensing agreement referenced in the Adler memo evidences a close relationship such that a presumption of notice should apply. Schwark conceded at the evidentiary hearing, "We don't know what the terms of that licensing agreement are or were. . . . " Regardless, even if we were to assume that Fischer and Brugg had some licensing relationship in the 1980s and early 1990s, that would provide no evidence Fischer and Brugg were related entities at the time Schwark filed her complaint in August 2000.
 ¶ 16 At the evidentiary hearing, Schwark insisted the Adler memo "on its face appears to have circulated among the various [Brugg] defendants, that [sic] indicates that Florian Adler, who is the insurance broker and liability claims guy . . . had actual knowledge of the claims." Again, even if we were to assume the parties had the same insurer, we have previously held an insurer who insures more than one party does not, as a matter of law, have notice of separate claims under different policies. Biggart v. Barstad, 182 Wis. 2d 421, 431,513 N.W.2d 681 (Ct.App. 1994). However, Schwark did not even offer evidence that Adler was an insurance broker for Brugg.
 ¶ 17 We conclude Brugg did not receive the notice required by the second condition of WIS. STAT. § 802.09(3). The court's findings in this regard lack evidentiary support and are therefore clearly erroneous.See Woodard v. Woodard, 2005 WI App 65, ¶ 12, 281 Wis. 2d 217,696 N.W.2d 221. To allow the amended suit to proceed against Brugg deprived it of the protections of the statute of limitations to its prejudice.See Bartels v. Rural Mut. Ins. Co., 2004 WI App 166, ¶ 15,275 Wis. 2d 730, 687 N.W.2d 84. Accordingly, we reverse and remand with directions to dismiss the claims as against Brugg. Because we conclude the notice requirements of the statute were not met, we need not reach the third condition under § 802.09(3).[8]
 ¶ 18 To the extent Schwark argues equitable tolling, we recognize that a circuit court may use its equitable powers to set aside a statute of limitations defense in certain circumstances. See, e.g., Williams v.Kaerek Bldrs., Inc., 212 Wis. 2d 150, 161, 568 N.W.2d 313 (Ct.App. 1997). However, we reject Schwark's assertion that fraudulent or inequitable conduct by Brugg made it impossible to discover Brugg's identity prior to the receipt of the Furrer affidavit and the Adler memo. See id.
 ¶ 19 It is well established that any party who manufacturers, distributes or sells an unreasonably dangerous product is subject to liability for physical harm to the ultimate user. See Rolph v. EBICos., 159 Wis. 2d 518, 528-29, 464 N.W.2d 667 (1991). Here, Schwark concedes Birchwood cooperated in providing information pursuant to the worker compensation case and Schwark does not feign confusion that a known defendant, Bramlett, sold the splicer to Birchwood. In fact, Schwark commenced a viable action against Bramlett before the statute ran and then settled shortly before trial. Nothing in the record indicates Schwark was prevented from commencing the action against Bramlett sufficiently in advance of the expiration of the limitations period such that depositions or other discovery could have been initiated to determine the identity of Brugg as the manufacturer and other potentially liable parties in the stream of commerce, such as FRSI. Instead, Schwark did not commence a lawsuit against anyone until August 22, 2000, three days before the statute of limitations expired. Schwark then did no discovery until serving interrogatories and document requests on Bramlett and Fischer on August 14, 2001.
 ¶ 20 In Dakin, in the context of the discovery rule, we rejected a claim that the statute should be extended for a defendant whose identity was unknown at the start of the action but where another allegedly responsible defendant was known. As we stated:
 Dakin's argument implies the discovery rule tolls the statute of limitations in personal injury cases until a plaintiff discovers every defendant who might be legally liable. . . . But the fact that a claim does not accrue until the plaintiff has knowledge of a suable party does not necessarily mean that it does not accrue until all suable parties are known. The purpose of the discovery rule is to limit the manifest injustice that would arise when application of the statute of limitations would destroy the rights of injured parties who could not have brought their claims earlier. . . . It is not a promise to suspend limitations until optimal litigation conditions are established, and we decline to expand the rule in that direction.
Dakin, 280 Wis. 2d 491, ¶ 15.
 ¶ 21 We conclude the rationale we expressed in Dakin applies with equal force here. This is not a case where Brugg's conduct denied Schwark knowledge of a suable party. Rather, the record demonstrates the bar to the action against Brugg was Schwark's waiting until the last minute to take action. As a result, equitable tolling does not apply.
 ¶ 22 We need not reach other issues presented. Gross v. Hoffman,224 Wis. 2d 296, 300, 277 N.W.2d 663 (1938) (only dispositive issues need be addressed).
By the Court. — Orders reversed and cause remanded with directions.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.
[1] Fischer's corporate name had slightly different suffixes, as it was registered in three different languages. In German, its name is Georg Fischer AG; in French it is Georg Fischer SA and in English its registered name is George Fischer Ltd.
[2] FRSI was a company formed by Harald Konheiser, an engineer with Brugg early in his career. During that tenure, Konheiser helped install the splicer at Birchwood in approximately 1988 and spent a week training Birchwood employees on the machine. After 1995, Konheiser formed his own company, FRSI, a Wisconsin corporation based in Tigerton, Wisconsin. FRSI was a wholly separate company from Brugg, and not authorized to service Brugg equipment. Yet, on several occasions Birchwood asked FRSI to return to service the splicer. Konheiser testified that he could not recall if he saw the splicer after Birchwood's modifications were made. Nevertheless, whenever he visited, he would tell the Birchwood employees if he saw something unsafe. In April 1996, FRSI inspected the jointer and splicer at Birchwood and in early March 1997, FRSI spent twenty-two hours repairing and adjusting the veneer pre-feeder. The record is unclear as to whether Schwark settled with FRSI prior to filing the amended complaint.
[3] Schwark again sought to amend the complaint on June 19, 2002, to include Royal Sun Alliance as a subrogated party. The motion was granted on October 2, 2002.
[4] All references to the Wisconsin Statutes are the 2005-06 version unless otherwise noted.
[5] There is no dispute among the parties that Brugg must have notice by proper service no more than ninety days after the statute of limitations expires. In Dakin, we inadvertently referred to the older version of WIS. STAT. § 801.02, which provided that service of a summons and complaint be accomplished within sixty days of filing. Dakin v.Marciniak, 2005 WI App 67, 280 Wis. 2d 491, 695 N.W.2d 867. That time frame was changed to ninety days. See 1997 Wis. Act 187, §§ 7, 8.
[6] Schwark does not argue constructive notice, but claims to offer evidence of actual notice.
[7] Schwark misrepresents the record by insisting in her brief that Brugg concedes the Adler memo was "internal." Schwark also insists that at the evidentiary hearing, "When the court was inquiring as to the corporate separateness, Brugg's counsel replied, `Well, they are the same company — they are the same company as Georg Fischer Limited Brugg, is my understanding.'" The transcript clearly indicates that counsel was merely acknowledging that M+S Brugg was a successor to George Fischer Limited Brugg, its former name. Similarly, counsel for Brugg does not concede in its brief to this court that the Adler memo was "internal" as between Fischer and Brugg. In addition, Schwark has inappropriately interspersed "spin" into what WIS. STAT. § 809.19(1)(d) requires to be an objective recitation of the facts. Schwark suggests that Brugg "through its +GF+ law department and insurance broker knew that the suit was intended to be brought against it." Schwark provides no citation to the record that a "+GF+ law department" or any insurance broker had a relationship to Brugg. Facts must be stated with absolute, uncompromising accuracy. They should never be overstated or "fudged" in any manner. William Eich, Writing the Persuasive Brief, WISCONSIN LAWYER MAGAZINE, Vol. 75, No. 2 (Feb. 2003).
[8] We note the only testimony taken at the evidentiary hearing demonstrates that Schwark conducted an internet search in "either `99 or 2000" that led to Fischer's website allegedly showing contact information different from the machine manuals. The Fischer website also contained the +GF+ symbol. Schwark therefore assumed that Fischer's website was created by the manufacturer of the splicer because both the Fischer website and the machine manuals contained the +GF+ symbol. However, Schwark knew or should have known the machine manuals created by Brugg stated: "Who we are: a subsidiary of the +GF+ group of companies. . . . " Schwark cites no authority to support the proposition that Brugg was under an obligation to create a website that detailed its corporate origins or disclaimed a corporate relationship to Fischer.