MICHAEL J. GABLEMAN, J.
¶ 1. We review a published decision of the court of appeals affirming Matthew R. Steffes's conviction of two counts of conspiracy to commit theft of property by fraud. See State v. Steffes, 2012 WI App 47, 340 Wis. 2d 576, 812 N.W.2d 529. While in prison, Steffes was part of a conspiracy that defrauded AT&T out of more than $28,000 of phone services through a scheme that involved furnishing the company with fraudulent information. Specifically, Steffes and his cellmate — with the help of friends and family members outside of prison — submitted fictitious business names and stolen personal identifying information to AT&T to set up phone numbers. Steffes would then make collect calls to these numbers with the knowledge they would never be paid for. The plan would work for short bursts of time; once it was clear that the phone bill was not going to be paid, AT&T would shut down the number. Steffes and the other members of the conspiracy would then move on and set up a new telephone number. Over the course of the eighteen-month life of this plan, Steffes made 322 phone calls, free of charge.
*687 ¶ 2. Steffes was subsequently charged and convicted of two counts of conspiracy to commit theft by fraud of property in excess of $10,000. See Wis. Stat. §§ 939.31, 943.20(l)(d), and 943.20(3)(c) (2011-12).[1]
¶ 3. Two issues are presented in this case. The first is whether submitting fictitious business names and stolen personal identifying information is a "false representation" under Wis. Stat. § 943.20(l)(d). Steffes alleges that such conduct is not a false representation because the statute requires that the actor make an express promise to pay. The second issue is whether the applied electricity that AT&T uses to power its network is included within the definition of "property" found in § 943.20(2)(b). Steffes argues that his conviction cannot be sustained because the evidence at trial showed that he stole telephone services and not property.
¶ 4. On the first issue we hold that Steffes made "false representations" to AT&T. The theft-by-fraud statute says that" '[f]alse representation' includes a promise made with intent not to perform if it is part of a false and fraudulent scheme." Wis. Stat. § 943.20(l)(d) (emphasis added). Because the word "includes" is not restrictive, the statute clearly anticipates that other conduct aside from an express promise falls under the umbrella of a "false representation." The scope and history of the theft-by-fraud statute make plain that providing fictitious business names and stolen personal identifying information to a phone company as a way of avoiding payment falls within the meaning of "false representation."
¶ 5. As to the second issue, "property" under the theft-by-fraud statute is defined as "all forms of tangible *688 property, whether real or personal, without limitation including electricity, gas and documents which represent or embody a chose in action or other intangible rights." Wis. Stat. § 943.20(2)(b) (emphasis added). Relying on the plain language of the statute in conjunction with commonly used dictionaries, we conclude that Steffes stole electricity from AT&T. AT&T purchases and stores electricity to power its network. When consumers make phone calls, AT&T must buy more electricity. The conspiracy perpetrated against AT&T therefore deprived the company of its property. We affirm the court of appeals.
I. FACTUAL BACKGROUND
¶ 6. While Matthew Steffes and Joshua Howard were cellmates at the Waupun Correctional Institution, Howard devised an illicit scheme that would allow the two of them to make free collect calls from prison. The conspiracy worked as follows. Friends and family members outside the prison walls would set up a phone number by giving false information to the phone company — in this case AT&T.[2] Once the dummy number was set up, Howard and Steffes could make unlimited collect calls to the number. The benefit to the people setting up the fraudulent numbers was that they would receive free phone service for a short period of time. After the phone company would shut the number down because of unpaid bills, the process would start over again.
*689 ¶ 7. The plan was elaborate and long-lasting, involving Steffes's father, his sister (who also has a child with Howard), his cousin, several friends, and another woman who has a child with Howard. In sum, 60 fraudulent phone numbers were created between May 2002 and May 2003. Part of the operation entailed giving fictitious business names to AT&T, while other numbers were set up using stolen personal identifying information obtained through a health care clinic where Steffes's sister's roommate worked. Over an 18-month period in 2002 and 2003, Steffes made 322 calls totaling 6,562 minutes. The loss to AT&T from setting up the fraudulent phone numbers and the unpaid calls was $28,061.41.
II. PROCEDURAL HISTORY
¶ 8. Steffes was charged with two counts of conspiracy to commit theft by fraud of property in excess of $10,000 pursuant to Wis. Stat. §§ 939.31, 943.20(l)(d), and 943.20(3)(c).[3] Section 939.31 is the conspiracy statute and it provides that "whoever, with intent that a crime be committed, agrees or combines with another for the purpose of committing that crime may, if one or more of the parties to the conspiracy does an act to effect its object, be fined or imprisoned or both." The theft-by-fraud statute, § 943.20(l)(d), makes it a crime to obtain "title to property of another person by inten *690 tionally deceiving the person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made." "Property" is defined as "all forms of tangible property, whether real or personal, without limitation including electricity, gas and documents which represent or embody a chose in action or other intangible rights." § 943.20(2)(b). Steffes pled not guilty and the case proceeded to a jury trial.[4]
¶ 9. Robert Lindsley, an engineer for AT&T, testified at trial that someone making a phone call is using "an applied form of electricity," and that all telephone companies need a "power network" to connect electricity to the telephone network. The key to understanding this concept, Lindsley explained, rests in the difference between AC and DC power. AC power is the electricity that runs through outlets in a wall. Conversely, DC power is stored in batteries. In Lindsley's words, "the telephone company actually buys AC power from the commercial utility[,] [turns] AC power into a DC form, [and] stores that energy in batteries so that if we lose commercial power to our central office, your phone continues to work."
¶ 10. According to Lindsley, AT&T customers are given a "subscriber pair." This is a wire that connects the registered phone line to the switch at AT&T's central office. The switch is what directs a phone call to the dialed number and connects the circuit, so when a customer makes a phone call he is not only using the subscriber pair, but also power from the switch. As Lindsley explicated, "We digitize the signal, so it uses *691 equipment that can transmit that telephone call either through fiberoptic cables, over cable systems, or even through radio links using radio towers."
¶ 11. Steffes was convicted of two counts of conspiracy to commit theft by fraud. The court sentenced him to two years in prison followed by thirty months of extended supervision on each count, to be served concurrently. He and the other members of the conspiracy were also ordered to jointly and severally pay the full $28,061.41 loss in restitution to AT&T. Steffes appealed his conviction to the court of appeals and argued: (1) the evidence was insufficient to support his conviction because no "false promise" was made during the commission of the conspiracy; (2) the applied form of electricity used by AT&T is more akin to a service and thus is not property for purposes of the theft-by-fraud statute.[5]
¶ 12. In a published opinion, the court of appeals affirmed his conviction. Steffes, 340 Wis. 2d 576. On the issue of whether a "false promise" was made during the conspiracy, Steffes argued that because no member of the conspiracy actually told the telephone company that he would pay for the services, no "false promise" was made. The court of appeals held that the theft-by-fraud statute does not require evidence of an express false promise; the statute requires only that "the offender 'intentionally deceiv[e]' the victim 'with a false representation . . . known to be false, made with intent to defraud.'" Id., ¶ 17 (quoting Wis. Stat. § 943.20(l)(d)). Here, all the false identifying information that the *692 conspirators gave to AT&T amounted to false representations. Steffes, 340 Wis. 2d 576, ¶ 17.
¶ 13. As to the second question — whether applied electricity is property under the theft-by-fraud statute —the court of appeals held that the presence of the term "electricity" in Wis. Stat. § 943.20(2)(b) is "broad enough to encompass the transmission of electricity over telephone lines." Steffes, 340 Wis. 2d 576, ¶ 23. Because the statute does not specifically distinguish between different types of electricity, the court of appeals reasoned that the legislature intended the term "electricity" to be applied broadly and to encompass electricity transmitted over telephone lines. Id.
¶ 14. We granted Steffes's petition for review and now affirm the court of appeals.
III. STANDARD OF REVIEW
¶ 15. There are two issues presented for our review. The first is whether submitting fictitious business names and stolen personal identifying information is a "false representation" under Wis. Stat. § 943.20(l)(d). The second is whether the applied electricity that AT&T uses to power its network is included within the definition of "property" found in § 943.20(2)(b). These are questions of statutory interpretation which we review de novo. Crown Castle USA, Inc. v. Orion Constr. Group, LLC, 2012 WI 29, ¶ 12, 339 Wis. 2d 252, 811 N.W.2d 332.
IV DISCUSSION
¶ 16. We first hold that submitting fictitious business names and stolen personal identifying information as a means of setting up phone numbers constitutes a *693 "false representation" for purposes of the theft-by-fraud statute. On the second question we hold that because AT&T must purchase and store electricity to power its network, it was defrauded out of its property by Steffes and his fellow conspirators. For these reasons, Steffes was appropriately prosecuted for conspiracy to commit theft by fraud and the evidence presented at trial satisfied all the elements of that crime.
A. Submitting Fictitious Business Names and Stolen Personal Identifying Information Constitutes a "False Representation"
1. History of Theft of Property by Fraud
¶ 17. The crime of theft by fraud traces its roots to a 1757 Act of the Parliament of Great Britain, which provided that
All persons who knowingly and designedly, by false pretense or pretenses, shall obtain from any person or persons, money, goods, wares or merchandizes, with intent to cheat or defraud any person or persons of the same ... shall be ... fined and imprisoned, or ... be put to pillory, or publicly whipped or... transported ... for the term of seven years ....
James E. Simon, A Survey of Worthless Check Offenses, 14 Mil. L. Rev. 29, 30 (1961) (quoting 30 Geo. 2, c.24, § 1). Prior to the passage of this statute, English common law did not recognize the "crime of obtaining property by false pretenses," as it was then known. State v. Semrau, 199 A.2d 580, 582 (Conn. App. Ct. 1963). Instead, the remedy for someone who was defrauded out of property was in civil court: "[W]e are not to indict one man for making a fool of another: let him bring his action "Reg. v. Jones, (1703) 91 Eng. Rep. 330 (Q.B.).
*694 ¶ 18. The law passed by Parliament served as a template for false pretense statutes in most American states. Simon, A Survey of Worthless Check Offenses, 14 Mil. L. Rev. at 30. Indeed, Wisconsin's very first compilation of statutes contained similar language. See Wis. Stat. ch. 134, § 33 (1849).[6] As this court stated in 1859, one of the goals of the false pretense statute was to "protect the weak and credulous from the wiles and stratagems of the artful and cunning." State v. Green, 7 Wis. 571 [*676], 580 [*685] (1859) (quoting the Supreme Judicial Court of Massachusetts's interpretation of an identical statute in Commonwealth v. Drew, 36 Mass. 179, 184 (1837)). Or as the court of appeals more recently described it: "The purpose in creating the statute was to protect unsuspecting citizens from swindlers who, realizing that the crimes of larceny and embezzlement required that property be taken without the owner's consent, obtained the property of others with their consent by means of willful misrepresentation and deliberate lying." State v. O'Neil, 141 Wis. 2d 535, 539, 416 N.W.2d 77 (Ct. App. 1987).
¶ 19. In the ensuing decades, a plethora of fraud and larceny statutes were added to Wisconsin's "offenses against property" statutory chapter. See generally Wis. Stat. Ch. 343 (1953). The current theft-by-fraud statute was enacted in 1955 as a way of condensing these crimes *695 into one law. See § 1, ch. 696, Laws of 1955; State v. Meado, 163 Wis. 2d 789, 797, 472 N.W.2d 567 (Ct. App. 1991) ("One of the objectives of the 1955 revision was to simplify the language and to state fully the prohibition in fewer words than the previous statutes."). It is with this background in mind that we apply the contemporary statute to Steffes's argument that his conviction must be reversed because no member of the conspiracy promised to pay AT&T for the phone services and thus no "false representation" was made.
2. Steffes's Conduct as a Conspirator Falls Under Wis. Stat. § 943.20(1)(d)
¶ 20. The theft-by-fraud statute makes it illegal to:
Obtain[] title to property of another person by intentionally deceiving the person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. "False representation" includes a promise made with intent not to perform if it is a part of a false and fraudulent scheme.
Wisconsin Stat. § 943.20(l)(d). Because Steffes was charged with conspiracy to commit theft by fraud, the State was required to prove that only one member of the conspiracy made a "false representation." See Wis. Stat. § 939.31. We hold that providing fictitious business names and stolen personal identifying information to a phone company with the intent of setting up temporary phone numbers constitutes a "false representation."
¶ 21. The key to understanding why Steffes's argument lacks merit is the second sentence of the statute. It says that a false representation "includes a *696 promise made with intent not to perform." Wis. Stat. § 943.20(l)(d) (emphasis added). If "includes" were replaced with "means" or "is," Steffes's position would be on stronger footing. The word "includes," though, is not restrictive. See 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction, § 47:7 (7th ed. West 2012) ("[T]he word 'includes' is usually a term of enlargement, and not of limitation .... It, therefore, conveys the conclusion that there are other items includable, though not specifically enumerated....") (citations omitted). "Including" is another way of saying "is not limited to." See State v. Popenhagen, 2008 WI 55, ¶ 41 n.20, 309 Wis. 2d 601, 749 N.W.2d 611. To reach the result desired by Steffes, we would have to either rewrite or ignore the plain language of the statute. This we may not do. See City of Menasha v. WERC, 2011 WI App 108, ¶ 18, 335 Wis. 2d 250, 802 N.W.2d 531 (noting that a court "may not substitute [its] judgment for that of the legislature; [it] may not rewrite the statute.").
¶ 22. A court may read the word "includes" in a restrictive manner only if "there is some textual evidence that the legislature intended the word 'includes' to be interpreted as a term of limitation or enumeration." Popenhagen, 309 Wis. 2d 601, ¶ 43. There is nothing in the two sentences of Wis. Stat. § 943.20(l)(d) to indicate that the legislature limited "false representation" to situations where an individual makes an express promise to pay for items he has no intention of paying for. In fact, the statute quite clearly says just the opposite. Accordingly, we reject Steffes's reading of the statute.[7]
*697 ¶ 23. Having rejected Steffes's view that the State was required to show that a member of the conspiracy promised to pay for the phone services, we hold that there was ample evidence that a "false representation" was made. Telephone companies require new customers to provide contact information for a reason: if the customer does not pay, the information enables the company to shut off service, demand payment, and if necessary, begin collection proceedings. A phone company's contractual rights are therefore violated when individuals give false information in order to evade payment. If Steffes were correct, telephone providers would be required to undertake exhaustive back *698 ground checks on each potential customer to ensure that the information provided was accurate. The theft-by-fraud statute does not require the State to show that a consumer made an express promise to retailers that he would pay the full amount owed. The evidence in this case more than supports the jury's finding that false representations were made. See State v. Poellinger, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990) (this court will uphold a conviction if any reasonable inferences support it).
B. The Applied Form of Electricity Used by AT&T is "Property" Under Wis. Stat. § 943.20(2)(b)
¶ 24. Steffes next alleges that his conviction should be reversed because what he and his co-conspirators stole was not property, but rather telephone services.[8] According to Steffes, the applied elec *699 tricity used by AT&T to power its network does not fall within the ambit of the statute. The State responds that because AT&T owns the electricity that powers the telephone lines, the conspiracy carried out by Steffes and the others clearly amounted to theft of AT&T's property via fraud.
¶ 25. To restate, "property" under the theft-by-fraud statute is defined as "all forms of tangible property, whether real or personal, without limitation including electricity, gas and documents which represent or embody a chose in action or other intangible rights." Wis. Stat. § 943.20(2)(b) (emphasis added). "Electricity" is not given a specific definition in the statute. "When a word of common usage is not defined in a statute, we may turn to a dictionary to ascertain its meaning." Burbank Grease Servs., LLC v. Sokolowski, 2006 WI *700 103, ¶ 14, 294 Wis. 2d 274, 717 N.W.2d 781. In searching for the appropriate dictionary definition of "electricity" we are mindful of the "ordinary-meaning canon," which provides that "[w]ords are to be understood in their ordinary, everyday meaning — unless the context indicates that they bear a technical sense." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69 (2012). A court "should assume the contextually appropriate ordinary meaning unless there is reason to think otherwise." Id. at 70. As nothing in § 943.20(2)(b) indicates that "electricity" was intended to have a technical meaning, we will look at the common understanding of the word. One dictionary defines "electricity" as an "[e]lectric current used or regarded as a source of power." The American Heritage Dictionary of the English Language 575 (5th ed. 2011). Another defines it similarly: "A supply of electric current laid on in a building or room." Shorter Oxford English Dictionary 807 (6th ed. 2007). And a dictionary published around the time the current theft-by-fraud statute was enacted defined "electricity" as an "electric current" with examples of its use as "to install electricity; a machine run by electricity." The Random House Dictionary of the English Language 459 (1966). Coursing through these definitions is the notion that the word "electricity," as it is used in its everyday parlance, means something that provides power.
¶ 26. A straightforward reading of this statute combined with the use of dictionaries unequivocally supports the State's view that Steffes stole electricity from AT&T. To surmount this textual and lexicographical hurdle, Steffes describes a parade of horribles that will supposedly be unleashed if we uphold his conviction under Wis. Stat. § 943.20(l)(d). For example, Stef *701 fes claims that the failure to pay a dental or barber bill could result in prosecution for theft by fraud because dentists and barbers use electricity when cleaning teeth and cutting hair. The difference, however, between not paying a dentist's or barber's bill and defrauding a phone company is that the dentist and barber do not own the electricity they use to provide services to customers, but rather pay a utility company to heat and light their offices. AT&T, by contrast, must buy AC power, turn it into DC power, and store it in batteries at one of its networks. The electricity used by AT&T is thus its "property" for purposes of the theft-by-fraud statute. Given this fundamental difference, we do not share Steffes's prosecutorial slippery slope concerns. Of. Robert H. Bork, The Tempting of America 169 (1990) ("Judges and lawyers live on the slippery slope of analogies; they are not supposed to ski it to the bottom.").
¶ 27. What is more, this court does not issue advisory opinions on how a statute could be interpreted to different factual scenarios in future cases. See Grotenrath v. Grotenrath, 215 Wis. 381, 384, 254 N.W. 631 (1934) ("[C]ourts will not ordinarily render advisory opinions where the questions propounded have not arisen and may never arise."). Rather, it is our job to adjudicate the dispute in front of us. It is thus not necessary for us to resolve the hypotheticals laid out by Steffes. See Gortmaker v. Seaton, 450 P.2d 547, 548 (Or. 1969) (en banc) ("It is fundamental to appellate jurisprudence that courts do not sit 'to decide abstract, hypothetical, or contingent questions ... .'") (citation omitted).
¶ 28. An issue raised at oral argument — but not briefed by Steffes — is that Steffes's conduct fell under the "theft of telecommunications service" statute, Wis. Stat. § 943.45. Because the parties did not address this question, we will not answer whether Steffes could be *702 charged under any of the provisions in § 943.45(1). See State v. Pettit, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (noting that an appellate court may decline to address issues that are not briefed); see also State v. Johnson, 153 Wis. 2d 121, 124, 449 N.W.2d 845 (1990) (declining to address an issue not briefed). We do, however, pause to note that whether Steffes could have been charged with a different crime for the same conduct is not determinative of whether Steffes's conviction for theft by fraud was valid.
¶ 29. That a prosecutor has discretion in deciding what charges to bring is codified in this state's law: "[I]f an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions." Wis. Stat. § 939.65. As we have said, "This section gives a green light to multiple charges, which may result in multiple convictions, under different statutory provisions." State v. Davison, 2003 WI 89, ¶ 51, 263 Wis. 2d 145, 666 N.W.2d 1 (emphasis removed). It is entirely permissible for a prosecutor to base a charging decision upon the penalty scheme set by the legislature for each potential crime. Cf. United States v. Batchelder, 442 U.S. 114, 125 (1979) ("The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause."). As long as a charging decision is not based on an arbitrary or discriminatory classification such as race or religion, prosecutors have broad discretion in deciding what charges to bring. State v. Ploeckelman, 2007 WI App 31, ¶ 13, 299 Wis. 2d 251, 729 N.W.2d 784. The ultimate question is whether the state can prove all the elements of the alleged offense.
*703 ¶ 30. The elements of theft by fraud are: (1) the victim was the owner of property; (2) the defendant made a false representation to the owner; (3) the defendant knew the representation was false; (4) the defendant made the representation with intent to deceive and to defraud the owner; (5) the defendant obtained title to the property by the false representation; (6) the owner was deceived or misled by the representation; (7) the owner parted with title to the property in reliance on the false representation and was thus defrauded. Wis JI — Criminal 1453A. AT&T purchased AC power from a utility company and turned it into DC power by storing it in batteries. It was thus the owner of the electricity, satisfying element number one. As for the next three elements, we explained in the previous section that members of the conspiracy knowingly made false representations to AT&T with the intent of deceiving and defrauding the company. The fifth element is satisfied by the fact that Steffes made hundreds of phone calls over AT&T's phone lines.[9] *704 Finally, on the last two elements, AT&T was deceived into parting with its property in that it relied on the fictitious business names and stolen personal identifying information that Steffes and his co-conspirators provided as a means of fraudulently setting up phone numbers. As all the elements of theft by fraud were met in this case, it is irrelevant whether Steffes could have been prosecuted under a different statute.
V CONCLUSION
¶ 31. Two issues are presented in this case. The first is whether submitting fictitious business names and stolen personal identifying information is a "false representation" under Wis. Stat. § 943.20(l)(d). Steffes alleges that such conduct is not a false representation because the statute requires that the actor make an express promise to pay. The second issue is whether the applied electricity that AT&T uses to power its network is included within the definition of "property" found in § 943.20(2)(b). Steffes argues that his conviction cannot *705 be sustained because the evidence at trial showed that he stole telephone services and not property.
¶ 32. On the first issue we hold that Steffes made "false representations" to AT&T. The theft-by-fraud statute says that " '[f]alse representation1 includes a promise made with intent not to perform if it is part of a false and fraudulent scheme." Wis. Stat. § 943.20(l)(d) (emphasis added). Because the word "includes" is not restrictive, the statute clearly anticipates that other conduct aside from an express promise falls under the umbrella of a "false representation." The scope and history of the theft-by-fraud statute make plain that providing fictitious business names and stolen personal identifying information to a phone company as a way of avoiding payment falls within the meaning of "false representation."
¶ 33. As to the second issue, "property" under the theft-by-fraud statute is defined as "all forms of tangible property, whether real or personal, without limitation including electricity, gas and documents which represent or embody a chose in action or other intangible rights." Wis. Stat. § 943.20(2)(b) (emphasis added). Relying on the plain language of the statute in conjunction with commonly used dictionaries, we conclude that Steffes stole electricity from AT&T. AT&T purchases and stores electricity to power its network. When consumers make phone calls, AT&T must buy more electricity. The conspiracy perpetrated against AT&T therefore deprived the company of its property. We affirm the court of appeals. By the Court. — The decision of the court of appeals is affirmed.

 All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated. Nothing has changed in any applicable statute since the relevant conduct occurred.

 SBC was the phone company that suffered the losses, but at the time of trial it had been renamed AT&T. See Shawn Young, SBC Completes AT&T Purchase, Takes New Name, Wall St. J., Nov. 19, 2005, at A8. To avoid confusion, we will exclusively designate the phone company as "AT&T" throughout this opinion.

 The State brought two charges because Steffes helped set up one group of phone numbers under the fictitious business name "Nick's Heating & Cooling" and another under "Douyette Typing Service" or "Douyette Advertising Service." The loss to AT&T from the former was $13,541.63 and the latter $14,519.78.
Steffes was also charged with but acquitted of one count of conspiracy to commit identity theft.

 Steffes was originally charged in 2004 but did not stand trial until five years later. Because the procedural history leading up to the trial is not germane to the issues at hand, we will not recount it.

 Steffes also alleged that he was entitled to resentencing and that the circuit court issued erroneous jury instructions. Steffes does not raise his sentencing claim before this court. As for the jury instruction issue, we address that in footnote 7, infra, of this opinion.

 That statute read:
If any person shall designedly, by any false pretence or by any privy or false token, and with intent to defraud, obtain from any other person any money or goods, wares, merchandize or other property, or shall obtain with such intent the signature of any person to any written instrument, the false making whereof would be punishable as forgery, he shall be punished by imprisonment in the state prison not more than five years nor less than one year, or by fine not exceeding five hundred dollars nor less than fifty dollars.
Wis. Stat. ch. 134, § 33 (1849).

 For similar reasons, we dismiss Steffes's argument that the circuit court gave improper jury instructions. The standard jury instructions for theft by fraud define "false representation" as "one of past or existing fact. It does not include expressions of *697 opinions or representations of law." Wis. JI — Criminal 1453A. The circuit court used this language but also added that "[a] representation may be expressed, or it may be implied from all of the circumstances surrounding the transaction." Steffes alleges that this addition rendered the court's instructions legally incorrect.
As a general matter, we first note that a circuit court has wide latitude to give instructions based on the facts of a case. State v. McCoy, 143 Wis. 2d 274, 289, 421 N.W.2d 107 (1988). The court may exercise its discretion regarding both the language and emphasis of the instruction. Id. "Only if the jury instructions, as a whole, misled the jury or communicated an incorrect statement of the law will we reverse and order a new trial." State v. Laxton, 2002 WI 82, ¶ 29, 254 Wis. 2d 185, 647 N.W.2d 784.
As we explain in this opinion, making an express promise to pay is one way, but not the only way, to make a "false representation." Given the facts in this case, it was not only entirely appropriate for the circuit court to instruct the jury as it did, but it would have been legally incorrect for the court to say that a false representation required an express promise to pay, as Steffes believes. The circuit court was well within its discretion to choose the words that it did.

 Steffes also presented a narrower version of this argument before the court of appeals. There, he asserted that the evidence adduced at trial was insufficient to prove that he stole more than $2,500 worth of electricity, and thus his convictions should be reduced from a felony to a misdemeanor. See Wis. Stat. § 943.20(3)(a) (making it a Class A misdemeanor if the property stolen does not exceed $2,500). Steffes does not make this argument before our court, and in any event, we reject this contention. At trial, when Robert Lindsley (an AT&T engineer) was asked how much electricity is used in a typical phone call, he replied that he could not "quantify" the amount "because every circuit is different" depending on the distance of the call. Steffes presented no evidence that the amount of electricity stolen was less than $2,500. The State, meanwhile, made its case that Steffes stole $13,541.63 of property in count one and $14,519.78 in count two. On both counts, the jury was asked the following on the verdict form:
Was the value of the property stolen more than $10,000?
Yes No
*699 If you answer the preceding question NO, then answer this question:
Was the value of the property stolen more than $5,000?
Yes_No_
If you answer the preceding question NO, then answer this question:
Was the value of the property stolen more than $2,500?
Yes_No_
The jury answered that the property stolen from AT&T was worth more than $10,000 on both counts. Given the evidence presented at trial by the State, we will not disturb the jury's conclusion that Steffes stole more than $10,000 of applied electricity from AT&T. See Morden v. Cont'l AG, 2000 WI 51, ¶ 39, 235 Wis. 2d 325, 611 N.W.2d 659 ("[AJppellate courts search the record for credible evidence that sustains the jury's verdict, not for evidence to support a verdict that the jury could have reached but did not.").

 The phrase "[o]btains title to property" found in Wis. Stat. § 943.20(l)(d) seems to indicate that a defendant must acquire actual legal title to an item to be convicted of theft by fraud. The court of appeals addressed this issue in State v. Meado, 163 Wis. 2d 789, 793, 472 N.W.2d 567 (Ct. App. 1991), when it was presented -with the question of whether a defendant who fraudulently obtained a lease — but not full title — to a van could be prosecuted under the statute. The answer was yes, because if the court "adopted [Meado's] argument that actual title is required to pass, an actor would have to obtain the legal document that is evidence of the title before the actor could be charged with violating" § 943.20(l)(d). Meado, 163 Wis. 2d at 798 (emphasis in original). This reading of the statute "would reward the industrious and designing thief who, having perpetrated the proper fraud by making false representations, could escape criminal liability as long as the official title remained *704 with the owner as security." Id. The Wisconsin Criminal Jury Instructions Committee agrees with this view as well. Wis JI — Criminal 1453A, Comment 5.
We concur with the Meado court's interpretation of Wis. Stat. § 943.20(l)(d). Very few pieces of property actually have a legal title with a name on it. If the state had to show that a defendant was a title holder of the property he stole, theft by fraud would be impossible to prosecute for a wide swath of cases. Furthermore, it would he absurd if fraudulently obtaining title to a home or vehicle were criminalized but the exact same conduct were legal so long as the perpetrator were only leasing. Cf. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 (observing that statutes are interpreted to avoid absurd or unreasonable results). For these reasons, we hold that 943.20(l)(d) only requires the prosecution to show that the defendant obtained the property.