COURT OF APPEALS
DECISION
DATED AND FILED

January 19, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1758-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF76

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ANTWAN D. HOPSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Door County: DAVID L. WEBER, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1    PER CURIAM. Antwan Hopson appeals from a judgment of conviction, following a bench trial, for three counts of first-degree sexual assault of a child under the age of thirteen. Hopson challenges: (1) the sufficiency of the evidence; (2) the introduction of other acts evidence involving similar sexual assaults Hopson committed against three other young girls; and (3) the denial of Hopson's motion for a mistrial. We affirm.

¶2    Hopson's sufficiency of the evidence challenge is meritless. The State had to prove beyond a reasonable doubt with respect to all three counts that Hopson had sexual contact with the victim and that she was under the age of thirteen at the time of the alleged sexual contact. There is no dispute regarding the victim's age.[1] As relevant here, "sexual contact" is defined as the intentional touching by Hopson of the victim's intimate part—her vagina. *See* WIS JI—CRIMINAL 2101A (2007). Sexual contact also requires, as pertinent here, that Hopson acted with the intent to become sexually aroused or gratified. ***Id.***

¶3    The State presented testimony from the victim—consistent with her forensic interview under oath, which was also introduced at trial—that Hopson sexually assaulted her. The victim testified that he did so on three occasions: once each on consecutive nights in the summer of 2016 when the eleven-year-old victim awoke to Hopson fondling her vagina at the home of his then girlfriend; and once more when Hopson woke the victim and fondled her vagina on a Sunday night in early December 2016 at the home of a different former girlfriend, when the victim had just turned twelve years old.

---

[1] Evidence of Hopson's knowledge of the victim's age was not required, and any mistaken belief he might have had regarding her age was not a defense. *See* WIS JI—CRIMINAL 2102E (2015).

¶4     The State's case was corroborated by the strikingly similar accounts of vaginal fondling described by three other acts witnesses—all of whom were also young girls assaulted while Hopson was staying as a house guest with his girlfriends at the relevant times.  Hopson claimed, however, that he was not guilty because everyone was lying and he was the victim.  Hopson testified that all of the victims had made up the allegations because they were angry that he was cheating on their mothers, and their mothers coached them to repeatedly tell the same stories.  Hopson also claimed that he was not at the house when the victim in the present case claimed he assaulted her in December 2016, because he had left in the middle of the night to traffic drugs to an unidentified person at another girlfriend's house.  Hopson even attempted to suggest that his son may have committed the December assault.

¶5     The circuit court properly observed that the victim's credibility was "really the whole case."  The court summarized the victim's testimony at length and found it credible. The court relied upon the victim's powerful testimony to support its credibility determinations and found "the essential events are consistent in a number of ways."  The court also noted that the victim's credibility was bolstered by the accounts of vaginal touching by the three other acts witnesses.

¶6     Conversely, the circuit court found Hopson's testimony not credible in any respect.  It stated Hopson's testimony was "[r]eally difficult to believe—I think the bottom line is it's difficult to believe much of what he said.  And certainly his alternative hypotheses just don't seem believable to this Court."  The court further stated:

> The defense argues that all of these people were mad at him for cheating and they concocted the stories to get back at him.  I just don't find this to be credible.  It would require a huge coordination of effort to get these young girls to make

these allegations, to carry them through in forensic interviews, and to testify under oath about them years later. This is not plausible. Even if they were to get their children involved—I'm talking about the mothers—what are the chances that they would make the allegations of vaginal touching all independently of each other? It's just not likely. And I don't find that to be credible.

¶7      We will not substitute our judgment for the trier of fact unless the evidence, viewed most favorably to the State and the conviction, is so lacking in probative value and force that no trier of fact acting reasonably could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). We will uphold the verdict if any reasonable inferences support it. *State v. Steffens*, 2013 WI 53, ¶23, 347 Wis. 2d 683, 832 N.W.2d 101. The trier of fact is also the sole arbiter of credibility and the weight of the evidence. *Poellinger*, 153 Wis. 2d at 506.

¶8      In the present case, the evidence was more than ample for the circuit court to find beyond a reasonable doubt that Hopson sexually assaulted his then-girlfriend's daughter twice when she was eleven and once after she turned twelve years old, all with the intent to become sexually aroused or gratified. The court thoroughly explained how it arrived at the guilty verdict and, based upon the evidence and inferences adduced at trial, it cannot be said that no rational trier of fact acting reasonably could be convinced of Hopson's guilt.

¶9      The circuit court also properly exercised its discretion when it allowed the State to introduce other acts evidence from Hopson's three other young female victims.[2] The court allowed the State to introduce this evidence

_____

[2] Hopson uses the phrase "abuse of discretion." Since 1992, the terminology used in reviewing a circuit court's discretion is "erroneous exercise of discretion." *See, e.g.*, *State v. Plymesser*, 172 Wis. 2d 583, 585-86 n.1, 493 N.W.2d 367 (1992).

after correctly engaging in the three-part analysis adopted by our supreme court in *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998). In that regard, the court held that the other acts were relevant for the permissible purposes of proving Hopson's motive and intent to become sexually aroused when he assaulted the victim in the present case, and relevant to bolster her credibility. *See State v. Gutierrez*, 2020 WI 52, ¶¶29-31, 391 Wis. 2d 799, 943 N.W.2d 870. It also held that the probative value of the other acts evidence was not substantially outweighed by the danger of unfair prejudice to Hopson. *See id.*, ¶¶29-30.

¶10 The first other acts witness testified that Hopson entered her bedroom around her fifth birthday on several occasions and fondled her vagina while Hopson was a guest of her mother, who was dating Hopson at the time. The second other acts witness testified that when she was fifteen years old Hopson entered her room and fondled her vagina at a group home run by Hopson's then girlfriend, where the victim was staying as a guest. The third other acts witness testified that Hopson fondled her vagina at the age of eight on several occasions on a couch and in her bedroom while Hopson was dating her mother.

¶11 The probative value of the other acts evidence is measured by the factual similarities it shares with the charged conduct. *Id.*, ¶34. Similarities make the other acts highly probative of the charged offenses, thereby reducing the danger of unfair prejudice. *See State v. Davidson*, 2000 WI 91, ¶75, 236 Wis. 2d 537, 613 N.W.2d 606. Moreover, Wisconsin allows for a greater latitude of proof when considering the admissibility of other acts evidence in child sexual assault cases.[3] *State v. Hurley*, 2015 WI 35, ¶59, 361 Wis. 2d 529, 861 N.W.2d 174. The

---

[3] The common law greater latitude rule is codified at WIS. STAT. § 904.04(2)(b)1. (2015-16).

greater latitude rule liberalizes each of the *Sullivan* prongs in favor of admitting similar acts of child sexual assault. *Gutierrez*, 391 Wis. 2d 799, ¶29.

¶12 Here, the factual similarities are obvious. The other act victims were all young girls. The sexual contact was the same: Hopson fondled the young girls' vaginas. In every situation, Hopson was also a house guest of women with whom he had a relationship. The relative dissimilarity in the victims' ages was not great. One was fifteen years old, whereas the victim in the present case turned twelve shortly before Hopson assaulted her. The two remaining other acts victims were eight and five years old, respectively. And, significantly, Hopson's sexual assault on one of the other acts victims occurred less than two weeks before his sexual assault of the victim in the present case.[4]

¶13 The circuit court relied upon the similarities of the other acts to find that they had indeed occurred, they were probative of Hopson's motive and intent to become sexually aroused when he assaulted the victim in this case, and they bolstered the victim's credibility. The court was able to appropriately separate the probative value from the prejudicial effect when weighing the other acts evidence as trier of fact. The court properly exercised its discretion, especially in light of the greater latitude rule, when it allowed the State to introduce the other acts testimony of Hopson's three other young female victims.

---

[4] Hopson argues that the allegations of the other acts victim who was five years old was remote in time, occurring "eight years prior to the charged offense." However, courts have held that the passage of far more time was insignificant. *See, e.g.*, *State v. Hurley*, 2015 WI 35, ¶85, 361 Wis. 2d 529, 861 N.W.2d 174 (twenty-five years); *State v. Davidson*, 2000 WI 91, ¶¶6, 10, 236 Wis. 2d 537, 613 N.W.2d 606 (nine years).

¶14     In this regard, we also emphasize that the circuit court addressed the State's other acts motion pretrial, at a point when the case was still on track for a jury trial. When Hopson decided to waive a jury trial, the probative value of the other acts evidence remained high, whereas the potential to unfairly prejudice a jury was eliminated. When this case became a bench trial, it also became unnecessary to give a cautionary instruction to the jury limiting the jury's use of the other acts evidence to its proper purpose. The potential for unfair prejudice was thereby greatly diminished, as the concerns about whether to admit otherwise probative evidence because it might unfairly prejudice a jury simply are not present when the court is the trier of fact. The court in that situation is presumed to be able to discern and weigh improper inferences and disregard extraneous matters. *See* ***State v. Cathey***, 32 Wis. 2d 79, 90, 145 N.W.2d 100 (1966).

¶15     Finally, the circuit court properly exercised its discretion when it denied Hopson's motion for a mistrial. After one of the other acts witnesses finished testifying, her older brother was scheduled to testify next for the State, presumably to corroborate her testimony. During the lunch break, however, she and her mother visited her brother in jail and discussed her testimony in violation of the court's sequestration order.

¶16     The State conceded there was a violation of the sequestration order but argued there was no prejudice. The circuit court listened to an audio recording of the jail visit and also examined the mother and the other acts witness under oath. The court then ordered that the brother would not be allowed to testify for the State. However, the court declined to exclude the other acts witness's testimony because it found no evidence that the State was a participant in the violation of the sequestration order or that the other acts witness's testimony had been tainted because she discussed her testimony with anyone before she testified.

¶17     It is within the circuit court's discretion to decide whether to allow a witness who violated the court's sequestration order to testify. *State v. Bembenek*, 111 Wis. 2d 617, 637, 331 N.W.2d 616 (Ct. App. 1983). The law favors less drastic alternatives short of a mistrial if they are available and practical. *State v. Bunch*, 191 Wis. 2d 501, 512, 529 N.W.2d 923 (Ct. App. 1995).

¶18     In shaping its ruling in the present case, the circuit court appropriately chose the available, and practical, less drastic remedy of excluding the only witness whose testimony would have been tainted by the violation of the sequestration order. The court sensibly chose not to exclude the other acts witness's testimony because she had finished testifying before the sequestration violation occurred and there was no evidence that her testimony was tainted in any way. As the court logically asked Hopson's trial counsel: what good it would do to declare a mistrial only to have another court or jury "have the exact same situation" with the same witnesses? The court properly exercised its discretion when it allowed this case to proceed to verdict after not allowing that witness's brother to testify.

    *By the Court.*—Judgment affirmed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).