9 P.3d 1046

**In re the Marriage of:  Byron KELLY, Petitioner/Appellant,**

v.

**Corinne KELLY, Respondent/Appellee.**

**No.  CV–98–0090–PR.**

Supreme Court of Arizona.

Sept. 14, 2000.

As Amended Oct. 11, 2000.

Hitchcock, Hicks & Conlogue by James L. Conlogue, Bisbee, Attorneys for Petitioner.

Michael E. Farro, Sierra Vista, Attorney for Respondent.

## OPINION

ZLAKET, Chief Justice.

¶1 Byron and Corinne Kelly were married in 1984 and divorced in 1997. During the marriage, both were employed by the federal government. Corinne participated in the Federal Employees Retirement System, a component of which is social security. Byron was enrolled in the Civil Service Retirement System (CSRS), which does not include social security. In fact, Byron would lose a portion of his CSRS benefits if he ever received social security payments. *See* 5 U.S.C. § 8349 (1996). Thus, he characterizes a portion of his retirement as being "in lieu of" such payments.

¶2 Because federal law prohibits state courts from dividing social security, *see* 42 U.S.C. § 407 (1991 & Supp.2000), the trial judge excluded Corinne's entitlement to same when he assessed the parties' community property for distribution. Relying on *Luna v. Luna*, 125 Ariz. 120, 608 P.2d 57 (Ariz.Ct.App.1979), the court of appeals affirmed this approach in a memorandum decision holding that no offsetting award of community property could be given to Byron as compensation for his wife's social security benefits.

¶3 Byron challenges the property division because all of his pension was treated as community property, while only Corinne's non-social security benefits were considered as such. He concedes that federal law prohibits the division of her social security, but asks this court to consider a portion of his CSRS benefits as separate property in order to compensate for the inequity.

## DISCUSSION

¶4 Generally, community property is everything acquired during marriage except by gift, devise, or descent.[1] *See* Ariz. Rev. Stat. § 25–211(1) (2000). Thus, salaries earned by each spouse during marriage are community property. Because pensions are a form of deferred compensation for services rendered, we have held that the portion of a retirement plan earned during marriage may be divided

as community property, even though it is not received until after dissolution of the relationship. *See Van Loan v. Van Loan*, 116 Ariz. 272, 273–74, 569 P.2d 214, 215–16 (1977).

¶5 Social security bears many characteristics of a pension and would ordinarily be considered community property under state law principles. Federal law, however, prohibits such benefits from being subject to "execution, levy, attachment, garnishment, or other legal process," and declares that they are not "transferable or assignable." 42 U.S.C. § 407(a). This provision has generally been interpreted to prevent social security from being divided by state courts at divorce. *See, e.g., In re Marriage of Boyer*, 538 N.W.2d 293, 295 (Iowa 1995); *Mahoney v. Mahoney*, 425 Mass. 441, 681 N.E.2d 852, 856 (1997); *Olson v. Olson*, 445 N.W.2d 1, 11 (N.D.1989). We agree, and view this entitlement as the separate property of the participating spouse.

¶6 We are not so constrained when considering CSRS benefits. In 1978, Congress amended the Civil Service Retirement Act (CSRA) to allow state courts to treat such payments as marital or community property. *See* Pub.L. No. 95–366, 92 Stat. 600 (1978). Prior to this amendment, the CSRA contained a restriction similar to § 407 of the Social Security Act, prohibiting the assignment, attachment, garnishment, or other encumbrance of benefits. *See* S.Rep. No. 95–1084, at 2 (1978), *reprinted in* 1978 U.S.C.C.A.N. 1379, 1380. The current provision, however, allows an exception for "any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation." 5 U.S.C. § 8345(j)(1)(A) (1996); *see also id.* § 8346(a). The Senate Committee on Governmental Affairs noted that this change was being made because "the retirement system fail[ed] to provide economic protection to the former spouse of a Federal employee." S.Rep. No. 95–1084, at 2. Thus,

---

1. In 1998, the statute was amended to exclude from community property that which is "[a]cquired after service of a petition for dissolution of marriage, legal separation or annulment if the petition results in a decree of dissolution of marriage, legal separation or annulment." Ariz.Rev. Stat. § 25–211(2).

while the CSRA does not mandate that its benefits be treated as community property, it contains no obstacles to state characterization of the asset in dissolution proceedings. *See Cornbleth v. Cornbleth,* 397 Pa.Super. 421, 580 A.2d 369, 371 (1990).

¶ 7   In Arizona, all community property must be divided "equitably, though not necessarily in kind," between the parties to a divorce.   Ariz.Rev.Stat. § 25–318(A) (2000). At dissolution the court may consider "excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community ... property."   *Id.* The statute requires a substantially equal distribution of community assets in the absence of a compelling reason to the contrary.   *See Hatch v. Hatch,* 113 Ariz. 130, 133, 547 P.2d 1044, 1047 (1976).

¶ 8   In *Toth v. Toth,* 190 Ariz. 218, 221, 946 P.2d 900, 903 (1997), this court decided that in determining whether sufficient cause exists to justify an unequal division, a trial judge is not limited by those circumstances specifically listed in the statute.   We stated that " '[e]quitable' means just that—it is a concept of fairness dependent upon the facts of particular cases." *Toth,* 190 Ariz. at 221, 946 P.2d at 903.

¶ 9   Relying on this "concept of fairness," we agree that "[t]o the extent individuals with Social Security benefits enjoy an exemption of that 'asset' from equitable distribution ... those individuals participating in the CSRS must, likewise, be so positioned." *Cornbleth,* 580 A.2d at 371.   A portion of Corinne's salary was paid into the social security system.   That salary was community property.   The resulting benefits, but for federal law, would be divisible as community property in Arizona.   Under the present legal regimen, however, they will be enjoyed only by her.

¶ 10   Viewed another way, it can be seen that in the absence of social security contributions, the community could have spent, saved, or invested those funds as it saw fit. In each instance the resulting asset, if any,

would have been divisible as community property.   But, as matters presently stand, community funds have been diverted to the separate benefit of one spouse.   We believe this situation compels an equitable response.

¶ 11   Our holding today does not conflict with *Luna.* 125 Ariz. at 123, 608 P.2d at 60. No attempt to value *Corinne's* expected social security benefits is called for here. Rather, a present value, measured as of the date of dissolution, should be placed on the social security benefits *Byron would have received had he participated in that system during the marriage.*   This necessarily will require a reconstruction of his wages.   The social security calculation can then be deducted from the present value of Byron's CSRS pension on the date of dissolution. The remainder, if any, is what may be divided as community property.   *See Cornbleth,* 580 A.2d at 372.   In this manner, pension benefits that are "in lieu of" social security can be set aside as his separate property, just as the value of Corinne's social security benefits are her separate property.

¶ 12   It may be suggested that this method will create an imbalance whenever there is a disparity between the salaries of each spouse.   But such an inequity is not of our making, nor can it be worse than the situation that presently exists under the law.   If both Byron and Corinne had participated in social security, they would be in the same financial position as that created by our holding today.   The social security portion of each retirement plan would be set aside as the respective spouse's separate property, whether equal or not, while the remaining benefits earned during marriage would be divided as community property by the trial court.   Thus, our resolution merely attempts to place the parties in the position they would have been had both participated in social security.

¶ 13   We are aware that other issues may arise as the rule is applied in future cases, but we need not address those here.[2]   Our decision is limited to the present facts.

2.  Issues that have been dealt with in other jurisdictions include whether a husband who participated in CSRS was entitled to an exemption of

hypothetical social security benefits where the wife had little or no pension of her own.   *See McClain v. McClain,* 693 A.2d 1355 (Pa.Su-

**310**

¶14 Finally, we are mindful that some courts refuse to consider social security in any way at divorce. *See, e.g., Wolff v. Wolff,* 112 Nev. 1355, 929 P.2d 916, 921 (1996); *Olson,* 445 N.W.2d at 11; *In re Marriage of Swan,* 301 Or. 167, 720 P.2d 747, 751 (1986). These jurisdictions generally rely on *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), which held that benefits under the Railroad Retirement Act could not be divided as community property, nor could an offset of other property be given to the nonparticipating spouse. The *Hisquierdo* court relied on an anti-attachment clause prohibiting the anticipation of benefits. *See id.* at 587–89, 99 S.Ct. at 811–12. Although the anti-attachment language in the Social Security Act is similar to that of the Railroad Retirement Act, it is not identical.[3] In any event, however, we are today neither dividing social security benefits nor providing an offset. Therefore, *Hisquierdo* is not violated by our holding.

## DISPOSITION

¶15 We vacate that portion of the court of appeals' decision which is in conflict with our holding today, and remand to the superior court for further proceedings consistent with this opinion.

CONCURRING: CHARLES E. JONES, Vice Chief Justice, STANLEY G. FELDMAN, Justice, FREDERICK J. MARTONE, Justice, and RUTH V. McGREGOR, Justice.

---

per.Ct.1997). The Pennsylvania court held that he was not entitled to such consideration because the wife was not on equal financial footing with him. *See id.* at 1359. The same court had earlier decided that in the situation where both husband and wife participated in CSRS and neither was entitled to social security benefits, a credit for hypothetical social security benefits was not proper. *See Elhajj v. Elhajj,* 413 Pa.Super. 578, 605 A.2d 1268, 1271 (1992).

3. The Railroad Retirement Act provides that benefits shall not "be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated." 45 U.S.C. § 231m(a) (1986). The relevant provision in the Social Security Act states that "[t]he right of any person to any future payment under this subchapter shall not be transferable or assignable ..., and none of the moneys paid or payable ... shall be subject to execution, levy, attachment, garnishment, or other legal process...." 42 U.S.C. § 407(a)(Supp.2000).