In re the Marriage of:

Jon R. Woodard, Petitioner-Appellant,

v.

Pammy L. Woodard, Respondent-Respondent.

Court of Appeals

*No. 03–3356. Submitted on briefs June 4, 2004.
—Decided March 31, 2005.*

2005 WI App 65

(Also reported in 696 N.W.2d 221.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Daniel M. Berkos* of *Berkos Law Office*, Mauston.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Fred D. Hollenbeck* of *Curran, Hollenbeck & Orton, S.C.*, Mauston.

Before Vergeront, Lundsten and Higginbotham, JJ.

¶ 1. LUNDSTEN J. Jon Woodard challenges maintenance payments he has been ordered to pay to his former wife, Pam Woodard, under the parties' divorce judgment.[1] We conclude that the circuit court erred by disregarding evidence of financial benefits

---

[1] In her brief, respondent Pammy Woodard refers to herself as "Pam." We follow her lead.

Pam was receiving, at the time of the divorce, from a recently commenced cohabitation relationship. We reverse the circuit court's judgment and remand for further proceedings consistent with this decision.

## Background

¶ 2.   Jon and Pam Woodard were married in 1994. Jon filed for divorce in February 2003. At trial, in October 2003, the parties primarily contested maintenance and child support.

¶ 3.   In the course of taking evidence about Pam's financial situation, the circuit court heard Pam's testimony about financial benefits she was receiving from her boyfriend. Pam and her boyfriend, a member of the military, lived together, apparently during the pendency of the divorce, before he began a tour of duty in Afghanistan. At the time of the divorce trial, Pam's boyfriend was still in Afghanistan. His military pay was being deposited into a joint bank account he shared with Pam. Pam used the account to pay rent and other bills.

¶ 4.   The circuit court disregarded evidence of the benefit Pam received from her boyfriend's income and awarded maintenance to Pam in the amount of $667 per month for a term of 30 months.[2] The court also awarded child support, but neither party contests that award. We reference additional facts as needed below.

## Discussion

¶ 5.   This case involves an initial award of maintenance. The question we address is whether the circuit

---

[2] Our review of the record discloses that the court set maintenance at $667 per month in its oral decision, but the judgment of divorce shows $677. We do not determine which maintenance figure is correct.

court, in making its maintenance decision, was justified in disregarding evidence of financial benefits Pam was receiving from a recently commenced cohabitation relationship. We conclude the circuit court erred.

¶ 6. Our starting point is the general rule that a court should consider the parties' financial circumstances as they exist at the time the court makes or modifies a maintenance award. *See Carpenter v. Mumaw*, 230 Wis. 2d 384, 390–91, 602 N.W.2d 536 (Ct. App. 1999) ("We will not disturb the trial court's findings of fact regarding the circumstances *at the time of the divorce* and *at the time of the hearing on the motion for modification* unless they are clearly erroneous." (emphasis added)); *see also Kenyon v. Kenyon*, 2004 WI 147, ¶ 15, 277 Wis. 2d 47, 690 N.W.2d 251 ("[D]uring a modification proceeding following a judgment of divorce, the circuit court must compare the facts as they existed at the time of the divorce with the current facts in light of the substantial change in circumstances."). In this case, Pam's testimony showed that during at least part of the pendency of the divorce, and up to and including the time of the trial, she benefited from her boyfriend's income. For example, Pam testified that her boyfriend's military income was automatically deposited into a joint account from which Pam paid "our bills" and rent.[3]

¶ 7. The circuit court disregarded the financial benefit Pam received from her relationship because it

---

[3] We note that Pam argues the evidence was insufficient to support a finding that she received any particular level of financial benefit from her boyfriend's income. We disagree. While we have not attempted to calculate a precise minimum amount, the record shows that Pam received sufficient funds from her boyfriend to pay for rent and other living expenses. We

was a recently commenced, non-marital relationship that could terminate at any time. Specifically, the court reasoned that Pam's financial benefit was the result of a "new," non-marital relationship in which her boyfriend had no legal obligation to support her and, consequently, Pam's "income could terminate within minutes through no control of anybody in this room." The court explained that it might have considered the financial benefit to Pam if there had been "a certain amount of time" with respect to the relationship, but that it would be "tenuous" to view Pam's boyfriend's income as a basis to excuse Jon from his maintenance obligation. We conclude that the circuit court's reasoning is subject to two interpretations: (1) the circuit court made a legal conclusion about recently commenced cohabitation relationships in general, or (2) the circuit court made a factual finding regarding Pam's particular relationship. Viewed either way, the circuit court erred.

¶ 8. The circuit court's decision might be a product of its legal conclusion that courts may not, when awarding maintenance, consider evidence of the financial benefits flowing from a recently commenced cohabitation relationship because the expected duration of such a non-marital relationship is too speculative. If this was the circuit court's reasoning, it erred as a matter of law for two reasons.

¶ 9. First, as explained in paragraph six above, the general rule is that maintenance decisions should be based on the parties' financial circumstances at the time the maintenance determination is made. In this case, Pam was receiving a financial benefit from her

conclude that a specific amount of financial support that is not *de minimis* may be reasonably inferred based on the evidence in the record.

cohabitation relationship at the time of the divorce trial. If, on remand, maintenance is ordered at a lower level or held open and the situation with Pam's boyfriend changes, the change may provide a basis for Pam to seek a modification.

■■

¶ 10. Second, a financial benefit flowing from cohabitation is an appropriate maintenance consideration. In the maintenance modification context, it is well established that courts, in determining whether to modify maintenance, must consider the effects of a recipient's cohabitation arrangement on the recipient's financial condition. *See Van Gorder v. Van Gorder*, 110 Wis. 2d 188, 196–98, 327 N.W.2d 674 (1983) ("Where the cohabiting couple shares expenses, it may be appropriate to decrease or terminate maintenance payments . . . ." *Id.* at 198.); *Taake v. Taake*, 70 Wis. 2d 115, 121, 233 N.W.2d 449 (1975) ("[C]ohabitation . . . can be acknowledged as a change of circumstances affecting . . . responsibility to provide alimony for . . . support."). The parties have not directed our attention to any case discussing cohabitation in the context of an initial maintenance award, and we have not located such a case. Still, we see no reason why the rule should be different with respect to an initial maintenance award. Courts consider the same "support" and "fairness" objectives and the same statutory factors whether making initial maintenance awards or modifying existing awards. *See LaRocque v. LaRocque*, 139 Wis. 2d 23, 32–33, 406 N.W.2d 736 (1987); *see also Kenyon*, 277 Wis. 2d 47, ¶ 13; *Rohde-Giovanni v. Baumgart*, 2004 WI 27, ¶ 31, 269 Wis. 2d 598, 676 N.W.2d 452. Other statutory factors may permit the consideration of financial benefits from cohabitation, but the one most obviously on point is the catchall factor, which reads: "Such other

factors as the court may in each individual case determine to be relevant." Wis. Stat. § 767.26(10) (2003–04).[4]

<hr>

[4] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted. Wisconsin Stat. § 767.26 reads:

Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

(1) The length of the marriage.

(2) The age and physical and emotional health of the parties.

(3) The division of property made under s. 767.255.

(4) The educational level of each party at the time of marriage and at the time the action is commenced.

(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(7) The tax consequences to each party.

(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9) The contribution by one party to the education, training or increased earning power of the other.

¶ 11. Therefore, if the circuit court relied on the legal conclusion that it could not consider evidence of the financial benefits flowing from a recently commenced cohabitation relationship when awarding maintenance because the expected duration of any such relationship is too speculative, the court erred as a matter of law.

¶ 12. The circuit court's decision might, instead, reflect its implicit factual finding that Pam's particular relationship was likely to end in the near future. If this factual finding were supported by evidence in the record, it might be an appropriate basis for exercising discretion to disregard the financial benefit from the relationship if the expected duration was so short that the financial benefit to Pam would be insignificant. But the problem with such a finding here is that it lacks support in the record and is, therefore, clearly erroneous. *See State v. Santiago*, 206 Wis. 2d 3, 26–27, 556 N.W.2d 687 (1996) ("the circuit court's factual finding ... was clearly erroneous" because no evidence supported the finding).

¶ 13. The circuit court relied on the fact that Pam's relationship was "new" and non-marital. The record shows that, prior to her boyfriend's tour of duty, Pam lived with him in a non-marital relationship for an unspecified period of time. The record does not show precisely how long, prior to the trial, Pam had been in that relationship or how long she had benefited from her boyfriend's income. What the record does show is that the time was long enough to reveal a pattern of a financial benefit to Pam. There was no evidence that Pam's relationship was faltering or otherwise nearing its end. We have only the circuit court's speculation that

---

**(10)** Such other factors as the court may in each individual case determine to be relevant.

because the relationship was "new" and non-marital, and because the boyfriend had no legal obligation, Pam's financial support "could terminate" at any time. But this alone is insufficient to support a finding that Pam's relationship was likely to end in the near future.

¶ 14. We do not hold that courts in setting maintenance awards may not make predictions based on the evidence presented. To the contrary, courts frequently base maintenance decisions, in part, on predictions. However, a circuit court's assessment must be based on facts of record, not on unfounded assumptions.[5] In this case, except for the short duration and non-marital nature of Pam's relationship, there is no evidence the relationship was likely to end soon.[6]

---

[5] See, e.g., Grace v. Grace, 195 Wis. 2d 153, 159–60, 536 N.W.2d 109 (Ct. App. 1995) (circuit court may properly exercise discretion in leaving maintenance open based on reasonable potential for future health problems); Plonka v. Plonka, 177 Wis. 2d 196, 202–03, 501 N.W.2d 871 (Ct. App. 1993) (" 'Because limited-term maintenance is relatively inflexible and final, the circuit court must take particular care to be realistic about the recipient spouse's future earning capacity.' " (quoting LaRocque v. LaRocque, 139 Wis. 2d 23, 41, 406 N.W.2d 736 (1987))); Bentz v. Bentz, 148 Wis. 2d 400, 405, 435 N.W.2d 293 (Ct. App. 1988) ("If a trial court's prediction [of future income] is based on the opinions of vocational experts which have a factual basis, we will not overturn as clearly erroneous a finding which looks to the future.").

[6] Jon suggests that the circuit court could have dealt with its concern about the longevity of Pam's relationship by holding maintenance open, instead of awarding maintenance. This suggestion prompts us to make an observation. Although the evidence here does not support a factual finding that Pam's relationship was likely to end in the near future, this same evidence might support a determination that the stability of Pam's relationship is sufficiently unknowable that maintenance should be held open. See Grace, 195 Wis. 2d at 158 ("When a

¶ 15.   Pam also argues that the circuit court could properly disregard any financial benefit she derived from her boyfriend because he was overseas and, therefore, she was not actually cohabiting with him at the time of trial. This argument misses the gist of our cohabitation cases. Although "cohabitation" is useful shorthand because it is a common situation in which a maintenance recipient obtains an ongoing financial benefit from another person, the real issue in such cases is not the physical presence of the other person, but the ongoing financial benefit, if any, derived from the relationship. *See Van Gorder*, 110 Wis. 2d at 196–97; *see also Overson v. Overson*, 125 Wis. 2d 13, 18, 370 N.W.2d 796 (Ct. App. 1985) (divorce judgment cannot provide that maintenance terminates automatically when recipient begins cohabiting with another person because it is "financial circumstances, rather than living arrangements, which dictate in determining the appropriate level of maintenance"); *Rosplock v. Rosplock*, 217 Wis. 2d 22, 37, 577 N.W.2d 32 (Ct. App. 1998) (money received from recipient's cohabitants did not sufficiently change recipient's economic status so as to constitute a substantial change in circumstances); *Popp v. Popp*, 146 Wis. 2d 778, 801, 432 N.W.2d 600 (Ct. App. 1988) ("[M]aintenance payments can be modified only upon a finding of change in the financial circumstances of the parties and not solely on the basis of the receiving spouse's cohabitation with a third party.").

¶ 16.   Therefore, we reject Pam's argument that any financial benefit she derived from her boyfriend could be disregarded because she was not actually cohabiting.

court provides appropriate and legally sound reasons, based on the facts of record, for holding open a final maintenance decision until a future date, it may do so."). But the issue is not squarely before us, and we do not resolve it.

¶ 17.   In sum, the circuit court erred either as a matter of law or as a matter of fact when it disregarded evidence of the financial benefit to Pam from her relationship. Thus, we reverse the circuit court's judgment and remand because the circuit court did not resolve factual disputes regarding the amount of financial benefit Pam received. It follows, of course, that the court did not exercise its discretion to award maintenance in light of such benefit.

*By the Court.*—Judgment reversed and cause remanded with directions.