**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 11, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1630**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019FA457

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE MARRIAGE OF:

TRACY DIANE DANIELSON,

  PETITIONER-APPELLANT,

 V.

CHRISTOPHER JOHN DANIELSON,

  RESPONDENT-RESPONDENT.

APPEAL from a judgment of the circuit court for Kenosha County: DAVID P. WILK, Judge. *Reversed and remanded with directions.*

Before Gundrum, P.J., Neubauer and Lazar, JJ.

¶1 LAZAR, J. Tracy Diane Danielson[1] appeals from a judgment of divorce following her lengthy marriage to Christopher John Danielson. She contends that the trial court erroneously exercised its discretion in valuing and dividing the parties' retirement assets without considering the impact of their disparate social security benefits and by failing to consider those social security benefits in limiting the scope of the held-open maintenance from Christopher to her. We agree that, while social security benefits themselves may not be divided in a divorce, it is appropriate for a court to consider their impact pursuant to WIS. STAT. § 767.61(3) (2021-22)[2] when fairly and equitably dividing the marital estate. We further agree that a similar consideration of social security benefits may be relevant to held-open maintenance.

¶2 Accordingly, we reverse and remand to the trial court for consideration of the disparity in the parties' social security benefits and pensions with respect to the marital property division as well as to determine the impact of this factor on the award and holding open of maintenance.

## BACKGROUND

¶3 After thirty-one years of marriage, Tracy and Christopher, both of whom resided in Wisconsin, were divorced in 2021. At the time of divorce, Tracy was fifty-nine years old, in good health, and working as a teacher in Illinois with an annual salary of approximately $89,000. Christopher was fifty-eight years old, also in good health, and employed as a maintenance technician earning

---

[1] For ease of identification, we refer to the former spouses by their first names.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

approximately $48,000 annually. Upon "consider[ing] the dual objectives of … support and fairness," the trial court awarded maintenance in the amount of $750 per month to be paid to Christopher by Tracy.[3] When Tracy sought clarification regarding maintenance from Christopher to her, the court issued a supplement to its prior decision and order and stated that this issue would be held open because, "[a]s a teacher in the State of Illinois and participant in the Illinois Teacher Retirement System, [Tracy] makes no contributions to social security." This "reservation of maintenance is limited to a situation in which, for reasons not currently contemplated, [Tracy] is unable to enjoy the benefits of her retirement contributions through the Illinois Teacher Retirement System."

¶4       The trial court also found that "the presumption of equal division ha[d] not been overcome," and so endeavored in its decision and order to divide the parties' marital property—including each of their various retirement plans—substantially equally. The most valuable of these retirement plans by far was Tracy's pension from the Illinois Teacher Retirement System, having a present value of approximately $1.1 million; Christopher's two pension plans had a combined present value of approximately $169,000 and Tracy's other two retirement accounts had a combined present value of approximately $97,000. Although the parties' joint expert testified regarding Tracy's and Christopher's expected social security benefits, the court did not refer to the fact that, owing to Tracy's participation in her teacher's pension program and her ineligibility to receive social security benefits based on her earnings as a teacher, Tracy's

---

[3] The order provides that "[m]aintenance shall end when [Christopher] remarries, dies, the maintenance is terminated by court order, or until he reaches the age of 67 **AND** is receiving his portion of [Tracy's] pension payments."

monthly benefit was projected to be only $334 at age sixty-seven while Christopher's monthly benefit would be $1,878 at age sixty-seven.

¶5    Tracy appeals, contesting both the property division and the scope of the held-open maintenance award.

## STANDARD OF REVIEW

¶6    This court reviews maintenance and marital property division determinations under an erroneous exercise of discretion standard. *Weiler v. Boerner*, 2005 WI App 64, ¶11, 280 Wis. 2d 519, 695 N.W.2d 833. "[A] discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789 (alteration in original; quoting *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981)). "As long as the trial court reaches a rational, reasoned decision based on the application of the correct legal standards to the record facts, the trial court's exercise of discretion will be affirmed on appeal." *Sellers v. Sellers*, 201 Wis. 2d 578, 585, 549 N.W.2d 481 (Ct. App. 1996).

¶7    Like marital property division findings, determinations as to maintenance are subject to the trial court's discretion and we will not reverse those decisions absent an erroneous exercise of discretion. *Steinmann v. Steinmann*, 2008 WI 43, ¶20, 309 Wis. 2d 29, 749 N.W.2d 145; *Grace v. Grace*, 195 Wis. 2d 153, 157, 536 N.W.2d 109 (Ct. App. 1995). When determining a hold open (or reservation) of maintenance, a court cannot leave maintenance open "for any and all purposes" when there is a limited basis for such a hold open. *Grace*, 195 Wis. 2d at 160. If a court does leave the door open forever or for any purpose, that

is an erroneous exercise of discretion and will result in a reversal and remand for the court to limit the applicability of the maintenance award. ***Id.***

¶8     "A [trial] court erroneously exercises its discretion if it makes an error of law or neglects to base its decision upon facts in the record." ***King v. King***, 224 Wis. 2d 235, 248, 590 N.W.2d 480 (1999); ***Kuhlman v. Kuhlman***, 146 Wis. 2d 588, 590, 432 N.W.2d 295 (Ct. App. 1988) ("[I]f the court relies on an incorrect legal standard—if it decides the case based on an erroneous view of the law—that constitutes an [erroneous exercise] of discretion and the decision may not stand."). This court decides "any questions of law which may arise during our review of an exercise of discretion independently of the [trial] court." ***LeMere***, 262 Wis. 2d 426, ¶14 (quoting ***King***, 224 Wis. 2d at 248).

## DISCUSSION

¶9     A key component of Wisconsin family law—especially as it relates to property division—is the idea of "fair and equitable" distribution between the parties (taking into account, of course, our state's marital property provisions).[4] *See **Lacey v. Lacey***, 45 Wis. 2d 378, 382, 173 N.W.2d 142 (1970) ("The division of the property of the divorced parties rests upon the concept of marriage as a shared enterprise or joint undertaking."); ***Ably v. Ably***, 155 Wis. 2d 286, 289-90, 455 N.W.2d 632 (Ct. App. 1990) (The "mandate of fairness in maintenance applies to a property division as well and supplies an additional standard under which to review the court's exercise of discretion."). "It is the equitableness of the

---

[4] WISCONSIN STAT. § 767.61(2)(a) contains the statutory exception to equitable division of marital property (by excluding property acquired by gift, by reason of death, or with funds from either of those sources).

result reached that must stand the test of fairness on review." ***Bahr v. Bahr***, 107 Wis. 2d 72, 81, 318 N.W.2d 391 (1982) (citation omitted).

¶10    While federal and state law are clear that social security benefits may *not* be divided in a divorce, the question of their impact on the fairness of marital property division is yet to be addressed in this state.  We are asked to consider how disparate social security benefits should be taken into account by a trial court in a divorce proceeding in general, and in particular, when one spouse is a public sector employee who does not contribute to social security but relies solely upon a government pension.  Tracy asserts that the court erred when it gave this factor no consideration whatsoever as it considered how to divvy up the marital assets.

¶11    In the alternative, Tracy contends that the trial court erred when it did not specifically hold open maintenance so that social security payments could be considered when in pay status.  The court did hold open maintenance for Tracy, but she is only challenging the limited scope of its order.

**I.    While social security benefits are not divisible in a divorce, they can be considered as a statutory property division factor.**

¶12    Social Security, established in 1935 under Title 42 of the United States Code ("The Public Health and Welfare"), was authorized by Congress "[f]or the purpose of enabling each State ... to furnish financial assistance to aged needy individuals" in order to provide "old-age assistance."  42 U.S.C. § 301. From the very start, it is clear that "the primary objective [of the Social Security Act] was to provide workers and their families with basic protection against hardships created by the loss of earnings due to illness or old age." ***Mathews v. de Castro***, 429 U.S. 181, 185-86 (1976); ***Raskin v. Moran***, 684 F.2d 472, 476, n.6 (7th Cir. 1982) ("Congress' broad purpose in establishing old-age benefits as part

of the social security system was to create a public social insurance program which would protect aged workers and their dependents from loss of income."); ***Conklin v. Celebrezze***, 319 F.2d 569, 571 & n.5 (7th Cir. 1963) (citing THOMAS F. BRODEN, LAW OF SOCIAL SECURITY AND UNEMPLOYMENT INSURANCE 3 (1962) (social security has a "moral purpose")).

¶13    "[W]hile the [Social Security] Act does not create vested rights, the System is a contributory one, in which claimants (or their beneficiaries) are not to be treated as recipients of gratuities, but as insured wage earners ...." ***Haberman v. Finch***, 418 F.2d 664, 667 (2d Cir. 1969).

### A.    Social security benefits are not a divisible asset.

¶14    Neither party disputes that social security benefits are not to be divided or parceled out between spouses in a divorce.  The United States Supreme Court, which repeatedly declines to opine on domestic relations and divorce proceedings—noting that that subject "belongs to the laws of the States and not to the laws of the United States," ***Hisquierdo v. Hisquierdo***, 439 U.S. 572, 581 (1979) (quoting ***In re Burrus***, 136 U.S. 586, 593-94 (1890))—nevertheless will take jurisdiction when there is "a conflict between federal and state rules for the allocation of a federal entitlement." ***Hisquierdo***, 439 U.S. at 582.  It did so in ***Hisquierdo*** with respect to protections afforded to retirement and social security benefits, holding that "anti-attachment" provisions, such as those regarding social security,[5] foster several public policy purposes:  they "ensure[] that the benefits

---

[5] "The Social Security Act specifically provides:  'The right to alter, amend, or repeal any provision of this [Act] is reserved to the Congress.'" ***Hisquierdo v. Hisquierdo***, 439 U.S. 572, 575 n.6 (1979) (alteration in original; quoting 42 U.S.C. § 1304).

actually reach the beneficiary"; they "pre-empt[] all state law that stands in [their] way"; and they "protect[] the benefits from legal process." ***Id.*** at 584. In essence, they "prevent[] the vagaries of state law from disrupting the national scheme, and guarantee[] a national uniformity that enhances the effectiveness of congressional policy." ***Id.***

¶15 Obviously, our supreme court also adheres to the anti-attachment doctrine for social security benefits and has held that "federal law preempts apportionment of social security benefits by state courts." ***Mack v. Mack***, 108 Wis. 2d 604, 613, 323 N.W.2d 153 (Ct. App. 1982). "The anti-assignment provision bars the assignment or transfer of '[t]he right of any person to any future payment' of social security benefits." ***Lakewood Credit Union v. Goodrich***, 2016 WI App 77, ¶17, 372 Wis. 2d 84, 887 N.W.2d 342 (alteration in original; citation omitted). This is because "[s]ocial security provides for apportionment of some of the retiree's benefits to his [or her] former spouse, preempting division by state courts." ***Mack***, 108 Wis. 2d at 611 (footnote omitted).

### B. Statutory factors are considered in equitable property divisions.

¶16 It bears repeating that Wisconsin is an equitable marital property division state:

> The principles of equitable distribution for allocating property upon divorce are based upon the concept that marriage is a partnership or a shared enterprise in which each of the spouses makes a different but equally important contribution to the family and its welfare and to the acquisition of its property.

***Wierman v. Wierman***, 130 Wis. 2d 425, 439, 387 N.W.2d 744 (1986); *see also Lacey*, 45 Wis. 2d at 382. The legislature created a rebuttable presumption of equal division in WIS. STAT. § 767.61(3), which provides, in relevant part:

**(3)** PRESUMPTION OF EQUAL DIVISION. The court shall presume that all property not described in sub. (2)(a) is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering all of the following:

....

**(c)** Whether one of the parties has substantial assets not subject to division by the court.

**(d)** The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

....

**(j)** Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

....

**(m)** Such other factors as the court may in each individual case determine to be relevant.

¶17     This is clearly:

an "equitable distribution" law, for, while it directs the court to presume that all property other than that acquired by one party through gift or bequest is to be divided equally, it allows "alter[ation]" of that equal division upon consideration of several listed factors, including, *inter alia,* the parties' earning capacities, their individual assets, and the contribution of each to the marriage ....

*Kuhlman*, 146 Wis. 2d at 590-91 (alteration in original; quoting WIS. STAT. § 767.255 (2003-04) (current version at WIS. STAT. § 767.61)). It is with this underpinning that we consider whether Christopher's nonattachable social security benefits fall within the contemplation of the statute.

### C.     Trial courts should take social security benefits into consideration.

¶18     The ultimate question is whether social security benefits expected for one spouse fall within the factors a trial court should consider in achieving an

9

equitable marital property division. Clearly, the court is to consider the "contribution of each party to the marriage" and the salaries the spouses earned. WIS. STAT. § 767.61(3)(d). The trial court should also look to the "economic circumstances of each party, including pension benefits," § 767.61(3)(j), even if it determines not to divide them between the spouses. *See Mack*, 108 Wis. 2d at 613.

¶19 Moreover, we conclude that social security benefits are "substantial assets not subject to division by the court" and count as "other factors [that] the court may in each individual case determine to be relevant." WIS. STAT. § 767.61(3)(c), (m). Our supreme court has "repeatedly stated that 'the aim of all statutory construction is to discern the intent of the legislature,' and that a 'cardinal rule in interpreting statutes' is to favor a construction which will fulfill the purpose of the statute over a construction which defeats the manifest object of the act." *Wierman*, 130 Wis. 2d at 433 (citations omitted).

¶20 The plain language of these statutory provisions is clear. Christopher's social security benefits are not a divisible asset pursuant to federal and state law. They are also substantial in this case. Thus, they clearly fall within at least one of the mandatory factors for a trial court to consider. *See* WIS. STAT. § 767.61(3)(c). Christopher does present a cogent argument that social security benefits are not a property right,[6] but he fails to persuade us that they could not be

---

[6] *Flemming v. Nestor*, 363 U.S. 603, 611 (1960) establishes that a person covered by the Social Security Act does not have an accrued right to benefit payments. Relying on the anti-attachment principle, the *Flemming* court held that "[t]o engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to everchanging conditions which it demands." *Id.* at 610.

considered, for example, a nondivisible asset that requires consideration in a court's deliberations. Even assuming, arguendo, that social security benefits do not fall within the parameters of that provision—or in cases down the line where social security benefits are not substantial—they are also, without a doubt, a factor that may be relevant to a fair and equitable marital property division.

¶21     We are also persuaded that the trial court could have further considered the disparity in social security benefits as a factor under WIS. STAT. § 767.61(3)(d) because Tracy and Christopher made separate and distinct contributions (out of their marital income) towards their retirement plans (pensions and social security). A failure to consider both of their contributions is contrary to that statutory directive to give the "appropriate economic value" to all contributions. *See Id.*

¶22     Moreover, a failure to weigh Christopher's expected social security benefits would violate the statutory consideration of the "[o]ther economic circumstances of each party, including pension benefits, vested or unvested, and future interests." WIS. STAT. § 767.61(3)(j). That provision "includes" specific benefits and interests, but is not limited to those categories.[7] The use of the word "'[i]ncluding' is another way of saying 'is not limited to.'" *State v. Steffes*, 2013 WI 53, ¶21, 347 Wis. 2d 683, 832 N.W.2d 101. Our supreme court, in *State v. Popenhagen*, 2008 WI 55, ¶43, 309 Wis. 2d 601, 749 N.W.2d 611, has held that

---

[7] *See also* **Steiner v. Steiner**, 2004 WI App 169, ¶9, 276 Wis. 2d 290, 687 N.W.2d 740 (holding, in the context of a marital property division, that a "sick leave account is an 'other economic circumstance' akin to unvested pension benefits" because while "[n]either is owned" or "can be transferred or sold," "both have readily apparent value, even though that value is contingent on future events.").

the word "includes" is to be given a more ordinary, expansive, nonexclusive meaning unless "there is some textual evidence that the legislature intended the word 'includes' to be interpreted as a term of limitation or enumeration."  There is no such textual evidence here.

¶23　While the question of whether a trial court may consider a spouse's participation in the social security program and the amount of their expected benefits when equitably dividing marital property is an issue of first impression in Wisconsin, it has been addressed and expressly allowed by other state courts.[8] The holdings in these cases, obviously, are not binding upon this court, but they illustrate other jurisdictions' efforts to grapple with this issue in the context of a

---

[8] *See* **Boyer v. Boyer**, 538 N.W.2d 293, 293-94 (Iowa 1995) (allowing social security benefits to be considered as a factor and holding that "a state court is not required to pretend to be oblivious of the fact that one party expects benefits that will not be enjoyed by the other"); **Herald v. Steadman**, 322 P.3d 546, 554 (Or. 2014**)** ("*Hisquierdo* notwithstanding, most courts have allowed consideration of a party's anticipated Social Security benefits as a factor, among others, to be considered in fashioning an equitable property division."); **Dunmore v. Dunmore**, 420 P.3d 1187, 1192 (Alaska 2018) (stating that a "majority of jurisdictions, however, allow Social Security benefits to be considered as one of many factors necessary to ensuring a 'just division'" of property) (citation omitted); **Biondo v. Biondo**, 809 N.W.2d 397, 403 (Mich. Ct. App. 2011) ("We join the majority of state courts that have considered this question, and hold that the circuit court may consider the parties' anticipated social security benefits as one factor, among others, to be considered when devising an equitable distribution of marital property."); **Olsen v. Olsen**, 2007 UT App 296, ¶22, 169 P.3d 765 ("We are persuaded by the reasoning of the majority of state courts that have considered the issue, and hold that the Social Security Act does not require us to turn a blind eye to a spouse's anticipated social security income in fashioning an equitable remedy at divorce."); **Neville v. Neville**, 2003 Ohio 3624, ¶11, 791 N.E.2d 434 ("[A] trial court, in seeking to make an equitable distribution of marital property, may consider the parties' future Social Security benefits in relation to all marital assets."); **Zahm v. Zahm**, 978 P.2d 498, 502 (Wash. 1999) (en banc) ("[A] trial court may still properly consider a spouse's social security income within the more elastic parameters of the court's power to formulate a just and equitable division of the parties' marital property."); **Morehouse v. Morehouse**, 121 P.3d 264, 267 (Colo. Ct. App. 2005) (a court "may premise an unequal distribution of property" on the fact that a party is likely to have greater social security benefits); **Mahoney v. Mahoney**, 681 N.E.2d 852, 856-57 (Mass. 1997); *see also* **Brane v. Brane**, 908 P.2d 625, 627-28 (Kan. Ct. App. 1995) for a comprehensive and lengthy list of other jurisdictions that "support[] a trial court's consideration of federal benefits under an equitable division of property theory."

fair and equitable property division in a divorce proceeding and they support this court's conclusion that expected social security benefits are, indeed, a relevant factor worthy of due consideration.

¶24 Several of these cases are particularly persuasive. In *Depot v. Depot*, 2006 ME 25, ¶17, 893 A.2d 995, Maine's state supreme court noted that "all relevant factors" should be taken into account in order to assist a trial court in achieving its role in marital property division to "accomplish a just division." The *Depot* court explained:

> Just as few married couples engaged in a serious assessment of their retirement resources would ignore the availability of Social Security benefits, courts should not be required to ignore reality and fashion a distributive award of the parties' retirement and other marital assets divorced from the actual "economic circumstances of each spouse at the time the division of property is to become effective." Failing to consider Social Security benefit payments a spouse can reasonably be expected to receive in the near future may result in a distorted picture of that spouse's financial needs, and, in turn, an inequitable division of the marital property.

*Id.* (citations omitted).

¶25 Next, in *Kelly v. Kelly*, 9 P.3d 1046 (Ariz. 2000), the wife participated in a federal retirement system (that included social security) while the husband participated in a civil retirement system (that did not). The Arizona state supreme court remanded the case to the trial court that had *not* considered social security benefits as a factor for marital property division, noting that while social security cannot be divided, it nevertheless cannot be ignored. *Id.* at 1048. The *Kelly* court focused upon a "concept of fairness" and explained that the social security benefits would only be enjoyed by the wife and that contributions "could have [been] spent, saved, or invested" as the spouses saw fit. *Id.* Thus,

"community funds have been diverted to the separate benefit of one spouse." ***Id.*** The court concluded that "this situation compels an equitable response." ***Id.***

¶26    And finally, in ***Cornbleth v. Cornbleth***, 580 A.2d 369, 423-24 (Pa. 1990), there were similar facts to this case:  one spouse participated in a civil service retirement system which prevented participation in the social security program.  The Pennsylvania state supreme court, to avoid a "double blow" of dividing a pension without considering social security, looked to what a present value calculation of social security benefits would have been if the spouse had been able to contribute and used that value to offset actual pension benefits. ***Id.*** at 426.  This, the court concluded, would enable equity to prevail by avoiding placing one spouse at a disadvantage due to their government work status.

¶27    The clear takeaway from these well-reasoned decisions[9] is that appellate courts consistently rely upon fairness as the touchstone for equitable marital property division.  For a court to meet its obligation to justly divide marital property, no relevant factors can or should be ignored.  *See* WIS. STAT. § 767.61(3)(m).  To disregard a reality in which one spouse is able to accumulate marital resources in such a way as to benefit only himself or herself by shielding that benefit upon a divorce presents a distorted view of the joint nature of marriage

---

[9] Christopher also cited to ***Goelz v. Goelz***, No. 2014AP103, unpublished slip op. (WI App Jan. 21, 2015), a nonbinding unpublished opinion; this is a violation of WIS. STAT. RULE 809.23(3). *See* ***State v. Milanes***, 2006 WI App 259, ¶21, 297 Wis. 2d 684, 727 N.W.2d 94 ("Our supreme court has reasoned that the rule against citing unpublished cases is essential to the reduction of the overwhelming number of published opinions and is a necessary adjunct to economical appellate court administration."); ***Tamminen v. Aetna Cas. & Sur. Co.***, 109 Wis. 2d 536, 563, 327 N.W.2d 55 (1982).  An "invitation to this court to consider its unpublished decision, or even the naked reference to it, violates both the letter and spirit of [RULE] 809.23(3)." ***Kuhn v. Allstate Ins. Co.***, 181 Wis. 2d 453, 468, 510 N.W.2d 826 (Ct. App. 1993), *aff'd*, 193 Wis. 2d 50, 532 N.W.2d 124 (1995).

and is the epitome of inequity. If both spouses make financial decisions in the course of their marriage towards retirement plans, those marital decisions cannot be set aside when the marriage terminates. For a court to allow one spouse to unfairly leverage joint financial decisions would indeed be a "double blow" to the disadvantaged spouse.[10]

¶28    During his thirty-one year marriage to Tracy, Christopher contributed to the social security system such that, at the time of their divorce, his monthly benefits were expected to be $1,878. In contrast, Tracy's social security benefits were expected to be significantly less ($344 per month) due to the fact that she was required to stop contributing to social security while teaching in Illinois, and instead contribute to the Illinois Teacher Retirement System like all other public sector teachers in that state. She contends she made these payments to compensate for the lack of future social security benefits upon her retirement.

¶29    In this case, while Tracy's expected pension payments would be approximately seven times greater than Christopher's pension payments, Christopher's expected monthly social security benefits were more than five times greater than Tracy's social security payments. Despite these great disparities in anticipated benefits, the trial court ignored the social security benefits and only equalized the parties' pensions, which resulted in Christopher alone benefiting from the social security contributions he made over the course of their marriage while both parties were to receive a share of Tracy's contributions to the public retirement system, which she was required to make in lieu of social security

---

[10] A spouse who, during the marriage, paid money into a non-social security plan loses the use of those funds during the marriage, and would also be subject to a possible divorce order requiring him or her to return a portion of those funds to the other spouse who does *not* have to also share any funds that spouse invested in social security during the marriage.

contributions. If she had made those contributions to social security, they would have been untouchable—just as Christopher's contributions were. "Because each spouse contributes equally to the prosperity of the marriage by his or her efforts, each spouse has an equal right to the ownership of the property upon a divorce." *Wierman*, 130 Wis. 2d at 439. That did not happen here where the trial court took one factor completely off the table when it divided the marital property.

¶30 Courts are to follow WIS. STAT. § 767.61 when deciding how to divide marital property. *McReath v. McReath*, 2011 WI 66, ¶¶23-24, 335 Wis. 2d 643, 800 N.W.2d 399. That statute sets forth the rebuttable presumption of equal property division. *Id.*, ¶24. Before a court may deviate from that presumption of equal property division, it must consider all of the factors in that "lengthy and detailed list of statutory factors" in § 767.61(3). *See LeMere*, 262 Wis. 2d 426, ¶16. "This is not to say that the [trial] court is precluded from giving one statutory factor greater weight than another, or from concluding that some factors may not be applicable at all." *Id.*, ¶25.

¶31 Tracy offers several options[11] for how the trial court could consider Christopher's social security benefits as a statutory factor relevant to equitable marital property division upon remand. We will not invade the trial court's prerogative on how to achieve its goal of equitable and fair division and will leave it up to that court to select whichever means it deems appropriate in the circumstances.

---

[11] These options include allocating other retirement assets to balance overall retirement income, employing valuation methods to determine net differences between the retirement plans, dividing other plans to account for discrepancies against Tracy, allocating proceeds from the sale of assets, and utilizing its own methodologies.

¶32 Accordingly, we conclude that the trial court erred as a matter of law when it declined to consider the significantly different expected social security benefits of the parties. We reverse the judgment of divorce and remand for a new consideration of all relevant property division factors under WIS. STAT. § 767.61(3), including expected social security payments. The trial court is instructed to revisit the factors that informed its ordered property division and to now take into consideration social security benefits as well as the disparity of income streams that will exist due to Tracy's inability to participate in the social security program.

## II.    Holding maintenance open should be revisited.

¶33 Wisconsin courts have held "that a [trial] court has the authority, if it provides appropriate and legally sound reasons, to 'hold open' a final maintenance decision after declining to make a maintenance award at that time of a divorce." *Hacker v. Hacker*, 2005 WI App 211, ¶7, 287 Wis. 2d 180, 704 N.W.2d 371; *Grace*, 195 Wis. 2d at 158.

¶34 Upon Tracy's motion for clarification, the trial court indicated that the initial order had not referenced its intent to reserve or hold open maintenance to Tracy due to a scrivener's error. The court held:

> This reservation of maintenance, however, is neither unfettered nor unlimited. Consistent with *Grace v. Grace* 195 Wis. 2d 153, 536 N.W.2d 109 (Ct. App. 1995), the reservation of maintenance is limited to a situation in which, for reasons not currently contemplated, [Tracy] is unable to enjoy the benefits of her retirement contributions through the Illinois Teacher Retirement System. Further, mere diminution of value due to market fluctuation will not constitute a revisiting of the maintenance award.

¶35    Maintenance is addressed in WIS. STAT. § 767.56, but "[w]hile maintenance and property division are separate and distinct awards, ... they cannot be made in a vacuum." **Bahr**, 107 Wis. 2d at 78-79.  When a court holds maintenance open, courts may "base maintenance decisions, in part, on predictions."[12]  **Woodard v. Woodard**, 2005 WI App 65, ¶14, 281 Wis. 2d 217, 696 N.W.2d 221.  However, they must be based upon facts in the record rather than on "unfounded assumptions." **Id.**  Various facts can lead a court to hold open maintenance in an effort to achieve fairness and equity.  "Because limited-term maintenance is relatively inflexible and final, the [trial] court must take particular care to be realistic about the recipient spouse's future earning capacity." **Plonka v. Plonka**, 177 Wis. 2d 196, 202-03, 501 N.W.2d 871 (Ct. App. 1993) (quoting **LaRocque v. LaRocque**, 139 Wis. 2d 23, 41, 406 N.W.2d 736 (1987)).

¶36    Tracy's argument with respect to maintenance is couched in the alternative.  She asserts that if the trial court's decision not to consider social security benefits for marital property division is upheld, this court should then order that maintenance be held open "for social security benefits to be considered as a future income stream for purposes of maintenance."  Having already determined that social security benefits *should* be considered by the trial court as a relevant factor to effect a fair and equitable marital property division, we need not address this last issue other than to provide the court an ability to reconsider the hold-open of maintenance upon remand.  It may be, on remand, that there is a

---

[12] *See* **Grace v. Grace**, 195 Wis. 2d 153, 159-60, 536 N.W.2d 109 (Ct. App. 1995) (future health problems); **Preiss v. Preiss**, 2000 WI App 185, ¶¶9, 22, 238 Wis. 2d 368, 617 N.W.2d 514 (concern the parties' circumstances may change); **Weiler v. Boerner**, 2005 WI App 64, ¶17, 280 Wis. 2d 519, 695 N.W.2d 833 (to ensure payment of debts until children reach the age of majority).

decision on marital property division that moots any reason to hold maintenance open. Or, it may be that a hold-open order on maintenance is even more apt. Again, we are not instructing the trial court on what the ultimate result of its deliberations should be; we simply return this matter for a new review.

## CONCLUSION

¶37 "The equitable distribution-partnership concept of marriage recognizes that a marriage possesses an important, intangible asset: the capability of both spouses to contribute to the marriage and to the acquisition of property through their labor." *Wierman*, 130 Wis. 2d at 440. Wisconsin law mandates that all relevant factors shall be considered by the trial court in order to fairly and equitably divide marital property. Social security benefits constitute a relevant factor that courts should consider in their deliberations. *See* WIS. STAT. § 767.61(3). While they cannot be divided between spouses, a failure to consider social security benefit payments could result in a distorted and inequitable division of marital property.

¶38 Accordingly, we conclude that the trial court erroneously exercised its discretion when it failed to consider the disparity in expected social security benefits of the parties when it strove to achieve its goal of an equitable marital property division. We therefore reverse and remand to the trial court for further proceedings consistent with this opinion.

> *By the Court.*—Judgment reversed and remanded with directions.

> Recommended for publication in the official reports.

19